COMMONWEALTH of Pennsylvania, Appellee

v.

David JOHNSON, Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 22, 2008.

Filed March 3, 2008.

David Johnson, appellant, Pro Se and Teri B. Himebaugh, Schwenksville, for appellant.

Hugh J. Burns, Jr., Asst. Dist. Atty., Philadelphia, for Com., appellee.

BEFORE: STEVENS, MUSMANNO, and HUDOCK, JJ.

OPINION BY STEVENS, J.:

¶ 1 This is an appeal from the order entered in the Court of Common Pleas of Philadelphia County dismissing Appellant's fifth petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541–9546. We affirm.

¶ 2 The relevant facts and procedural history are as follows: On November 1, 1977, Appellant, who drove his accomplices to a store and acted as a lookout during a robbery and murder of the store's owner, was convicted of first degree murder, robbery, and criminal conspiracy. On February 7, 1979, Appellant was sentenced to life in prison, and this Court subsequently affirmed Appellant's judgment of sentence. The Supreme Court granted Appellant's petition for allowance of appeal, and in a *per curiam* order filed on November 5, 1981, the Supreme Court affirmed. *See Commonwealth v. Johnson*, 496 Pa. 228, 436 A.2d 627 (1981) (*per curiam* order).

¶ 3 On June 23, 1982, Appellant filed a petition under the Post Conviction Hearing Act,[1] which was the predecessor of the PCRA, and following the appointment of counsel and the filing of an amended petition, the lower court denied the petition on January 9, 1984. This Court affirmed on September 6, 1985, *See Commonwealth v. Johnson*, 350 Pa.Super. 632, 503 A.2d 456 (1985) (unpublished memorandum), and Appellant's petition for allowance of appeal was denied on October 6, 1986.

¶ 4 On May 3, 1988, Appellant filed a petition for collateral relief under the PCRA, and counsel was appointed. Following the filing of an amended petition and an evidentiary hearing, the PCRA court denied the petition and Appellant appealed. This Court affirmed on June 9, 1993, *See Commonwealth v. Johnson*, 431 Pa.Super. 639, 631 A.2d 1368 (1993) (unpublished memorandum), and the Supreme Court denied Appellant's petition for allowance of appeal on March 9, 1994.

¶ 5 On October 15, 1998, Appellant filed another PCRA petition, which the lower court dismissed on the basis it was untimely filed. This Court affirmed on September 22, 2000. *See Commonwealth v. Johnson*, 766 A.2d 888 (Pa.Super.2000) (unpublished memorandum).

¶ 6 On September 23, 2003, Appellant filed another PCRA petition, which the PCRA court dismissed as being untimely. Appellant did not file an appeal.

¶ 7 On July 7, 2005, Appellant filed a fifth PCRA petition, as well as two counseled amended PCRA petitions, and the Commonwealth filed a brief in opposition. The PCRA court gave notice of its intent to dismiss, and by order entered on July 14, 2006, the PCRA court dismissed Appellant's PCRA petition without a hearing. This timely appeal followed. The PCRA court did not order Appellant to file a Pa.R.A.P. 1925(b) statement; however, on July 17, 2007, the PCRA court filed an opinion indicating it dismissed Appellant's PCRA petition because it was untimely.

1. 42 Pa.C.S.A. § 9541 *et seq.* (repealed).

The standard of review for an order denying post-conviction relief is limited to whether the record supports the PCRA court's determination, and whether that decision is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. Furthermore, a petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact and the petitioner is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings. *Commonwealth v. Taylor*, 933 A.2d 1035, 1040 (Pa.Super.2007) (citations omitted).

¶ 8 Pursuant to 42 Pa.C.S.A. § 9545, any PCRA petition must be filed within one year of the date the judgment becomes final, excepting under three very limited circumstances:

**(b) Time for filing petition.—**

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

(2) Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented.

(3) For purposes of this subchapter, a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review.

(4) For purposes of this subchapter, "government officials" shall not include defense counsel, whether appointed or retained.

42 Pa.C.S.A. § 9545(b) (emphasis in original).

■ ¶ 9 In the case *sub judice*, Appellant's judgment of sentence became final on January 4, 1982, which is sixty days after the Pennsylvania Supreme Court affirmed on November 5, 1981, and the time allowed for petitioning for writ of *certiorari* to the United States Supreme Court expired. *See* 42 Pa.C.S.A. § 9545(b)(3); Former U.S. Supreme Court Rule 20.1 (petition for writ of *certiorari* is deemed timely when it is filed within 60 days after the denial of *allocatur*). On its face, then, Appellant's July 7, 2005 PCRA petition is untimely as it was filed over twenty-three years after his judgment of sentence became final.[2]

---

**2.** There exists a *proviso* to the 1995 amendments to the PCRA which provides a grace period for petitioners whose judgments have become final on or before the effective date of the amendments. However, the *proviso* is not applicable to second or subsequent PCRA petitions. *Commonwealth v. Thomas*, 718 A.2d 326 (Pa.Super.1998) (*en banc*).

¶ 10 Nevertheless, as previously stated, there are three exceptions under which a PCRA petition may still be considered. Appellant claims he qualifies for the after-discovered evidence exception enumerated in Subsection 9545(1)(b)(ii). Specifically, he first claims the Assistant District Attorney, Frank DiSimone, contrary to what he represented during Appellant's trial, had evidence that the store where the killing and robbery took place was not a "legitimate" business but was actually a "front" for a drug business. Appellant contends that the prosecutor's evidence that the store was not legitimate would have supported a defense claim that Appellant did not know or have reason to know that his co-conspirator was going to kill or rob the store owner since Appellant believed the co-conspirator was merely collecting money owed to him from a drug transaction. Appellant claims his newly-retained PCRA counsel, Teri B. Himebaugh, Esquire, who entered her appearance on July 7, 2005, remembered from reading transcripts for an unrelated PCRA case, in which she represented Mark Garrick, that Attorney DiSimone, who left the district attorney's office and represented Mark Garrick in October 1981 in the unrelated murder/robbery trial, claimed as a defense that the store was a "front" for a drug business. Appellant claims the shooting in Garrick's case occurred in 1975 and was well-known during the time Attorney DiSimone was still a prosecutor. Therefore, Appellant reasons, as of the time of his trial in 1977, Attorney DiSimone must have had evidence that drug activity was occurring at the store since he made such an argument when he represented Mr. Garrick in 1981. We conclude the claim does not qualify for Subsection 9545(b)(1)(ii)'s "after-discovered" evidence exception.

¶ 11 As the Supreme Court recently stated in *Commonwealth v. Bennett,* 593 Pa. 382, 930 A.2d 1264, 1270 (2007):

> The text of the relevant subsection provides that "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by due diligence." 42 Pa.C.S. § 9545(b)(1)(ii). We have repeatedly referred to this subsection as the "after-discovered evidence" exception to the one-year jurisdictional time limitations. This shorthand reference was a misnomer, since the plain language of subsection (b)(1)(ii) does not require the petitioner to allege and prove a claim of "after-discovered evidence." Rather, it simply requires petitioner to prove that there were "facts" that were "unknown" to him and that he exercised "due diligence."

(citation and footnote omitted).

¶ 12 Here, we conclude Appellant has failed to prove there were "facts" which were "unknown" to him and that he exercised "due diligence." Appellant claims Attorney DiSimone must have known the store was a "front" for a drug business when Appellant was tried in 1977 since Attorney DiSimone made such an argument when he was defending Mr. Garrett in October of 1981. By Appellant's own admission, Attorney DiSimone made the arguments concerning the legitimacy of the subject store almost four years after Appellant's trial. Moreover, aside from pure speculation, Appellant has simply presented no evidence supporting the conclusion Attorney DiSimone was aware of the store's illegitimate use at the time of Appellant's trial.[3] *Commonwealth v.*

---

**3.** We note that page 22 is missing from Appellant's brief, which was submitted to this Court. To the extent Appellant develops his first issue further thereon, we find the argument to be waived since such was not provided for our review.

*Dickerson*, 900 A.2d 407 (Pa.Super.2006) (holding that the appellant's mere assertions were insufficient to support after-discovered evidence exception). Furthermore, since Appellant avers he knew the store was a "front" but chose not to present such a defense at trial because he believed his testimony would not be believed,[4] and Attorney DiSimone's representation of and statements made during the proceedings in favor of Mr. Garrett was of public record, Appellant has failed to meet his burden that the fact the store was a "front" was "unknown" to him. *Taylor*, 933 A.2d at 1040 ("[F]or purposes of 42 Pa.C.S.A. § 9545(b)(1)(ii), information is not 'unknown' to a PCRA petitioner when the information was a matter of public record.") (quotation and quotation marks omitted). Finally, due to the public nature of Attorney DiSimone's representation of and defense strategy used for Mr. Garrett, we conclude Appellant has not reasonably explained why, with the exercise of due diligence, he could not have discovered this issue prior to July 7, 2005, when he filed the instant PCRA petition. *See id.* Therefore, we find Appellant has not met the requirements of Subsection 9545(b)(1)(ii) on this basis.

¶ 13 Appellant next asserts he is entitled to Subsection 9545(b)(1)(ii)'s exception on the basis of newly discovered witnesses, Ronald Johnson and Mark Garrick. Appellant contends Mr. Garrick and Mr. Johnson would have testified that they had personal knowledge the victim owed Appellant's coconspirator money from a drug transaction.

¶ 14 We conclude the fact the victim allegedly owed Appellant's coconspirator money from a drug transaction does not meet the requirements of Subsection 9545(b)(1)(ii) in the case *sub judice*. Appellant admits that, prior to his trial, he knew the victim owed money to the co-conspirator and, in fact, that is the reason he accompanied his co-conspirator to the store. As such, Appellant cannot demonstrate that the witnesses' proposed testimony reveals "facts" which were "unknown" to Appellant. *See Bennett, supra.*

¶ 15 Appellant next asserts he is entitled to Subsection 9545(b)(1)(ii)'s exception on the basis of newly discovered witness Howard Williams. Appellant asserts that his family recently posted flyers seeking witnesses who may have observed the shooting at issue. On July 9, 2005, Howard Williams provided Appellant with an affidavit indicating that he was an eyewitness to the shooting. Specifically, Mr. Williams indicated (1) he was hiding in the store's bathroom at the time of the shooting; (2) he heard the victim tell a man he was not refunding him any money or taking back the drugs; (3) Appellant was not the shooter because Mr. Williams saw Appellant's co-conspirator shoot the victim; (3) he heard another man ask, "why did you shoot him?"; and (4) the shooter replied, "It looked like he was reaching for something."

¶ 16 We conclude Appellant has failed to demonstrate Mr. William's testimony would have met Subsection 9545(b)(1)(ii)'s requirements. Mr. Williams proffers that he would testify he saw Appellant's co-conspirator shoot the victim because, during an argument about payment in a faulty drug transaction, the shooter thought the victim was pulling a gun. These are not facts which were "unknown" to Appellant. *See Bennett, supra.* At trial, it was established that Appellant was not the shooter

---

4. We find it unsettling that Appellant admits he presented a false alibi defense at trial. *See* Appellant's Brief at 17. Appellant now claims he was present during the shooting/robbery but was unaware his co-conspirator was going to rob/shoot the victim.

and Appellant was convicted on the basis he was the lookout/driver. Moreover, Appellant avers that he knew his co-conspirator was going to the store to demand payment in connection with the co-conspirator's drug dealings. Therefore, the facts were not unknown to Appellant. Moreover, we question whether Appellant was duly diligent in locating Mr. Williams. Appellant indicates his family simply posted flyers in the neighborhood and Mr. Williams responded. With the exercise of such minimal effort, and without further explanation, it appears Mr. Williams could have been discovered well before 2005.

¶ 17 Appellant next argues he qualifies for Section 9545(b)(1)(ii)'s exception due to a lecture given to prosecutors in 1990 by Bruce Sagel, who was the training director for the Philadelphia District Attorney's Office. In the lecture, Mr. Sagel advocated discriminating against African Americans by using peremptory strikes to exclude African Americans from the jury.[5] Appellant contends that, while the lecture was first reported in June of 1997 in *Philadelphia* magazine, Mr. Sagel denied making the remarks and the source for the article remained confidential. However, on November 28, 2005, while testifying under oath in an unrelated criminal matter, Mr. Sagel identified Assistant District Attorney Gavin Lentz as the source for the article. Thereafter, Attorney Lentz confirmed he was the source and provided his handwritten notes to Angus Love, Esquire, who was the attorney in the unrelated criminal matter. Appellant indicates that, on January 18, 2006, Mr. Love provided copies of Mr. Lentz's notes to Appellant. Appellant contends the newly-discovered evidence consists of Attorney Lentz's handwritten notes.

¶ 18 This Court has previously addressed whether Mr. Sagel identifying Mr. Lentz on November 28, 2005, and the subsequent release of Mr. Lentz's handwritten notes, qualifies as an exception:

[T]he Sagel lecture and the Lentz notes were first referenced and quoted in a 1997 article in Philadelphia Magazine about then-mayoral candidate Jack McMahon. The article discussed, *inter alia*, a 1987 training video by McMahon, which purportedly "depicted McMahon instructing new district attorneys how to use peremptory challenges to discriminate in jury selection in criminal trials." The Commonwealth contends that there was no reason that Appellant could not have raised his after-discovered evidence claim prior to learning Lentz's identity or obtaining a copy of the notes, and that, in any event, such evidence does not entitle Appellant to relief. We agree.

Indeed, in *Commonwealth v. Lark*, 560 Pa. 487, 746 A.2d 585 (2000), our Supreme Court rejected the appellant's assertion that the evidence of the McMahon tape discussed above, which was made after the appellant's trial in 1985, established a *prima facie* case of discrimination entitling him to a new trial or evidentiary hearing. The Court explained:

We reject Appellant's suggestion that Attorney McMahon's statements during a training session in 1986 or 1987 governed the conduct of a different prosecutor in 1985 merely because both attorneys worked in the same office. We have also previously determined that the tape is not sufficient to establish a policy of discrimination in

---

5. Appellant, who is African American, asserts in his brief that he was tried by an all white jury with sixteen peremptory strikes being used by the Commonwealth to exclude African Americans.

jury selection by the prosecutors in the District Attorney's Office of Philadelphia County. *See Commonwealth v. Rollins,* 558 Pa. 532, 738 A.2d 435, 443 n. 10 (1999). Thus, the McMahon tape in and of itself "does not demonstrate that there was discrimination in *his* case," *Id.* (emphasis in original), and cannot form an independent basis for a *Batson* claim. Rather, the facts underpinning Appellant's *Batson* claim (including the race of each potential juror, the prosecutor's statement and the trial court's refusal to make a record) have been present since the inception of his trial. Consequently, any *Batson* claim predicated upon these previously existing facts does not fall within the exception enumerated under 42 Pa.C.S. § 9545(b)(1)(ii).

For the same reason, we hold that Appellant's alleged after-discovered evidence of Lentz's handwritten notes of Sagel's 1990 lecture, which took place seven years after Appellant's 1983 trial, does not establish that there was discrimination in Appellant's trial and does not form a basis for a *Batson* claim. *Commonwealth v. Davis,* 916 A.2d 1206, 1209 (Pa.Super.2007) (citation and footnote omitted).

¶ 19 In light of the aforementioned, we find Appellant does not qualify for the exception on the basis Lentz's notes of the 1990 lecture, which took place approximately thirteen years after Appellant's trial, were recently released.[6]

█ ¶ 20 Appellant's final claim is that he qualifies for Subsection 9545(b)(1)(iii)'s exception. Specifically, Appellant contends the PCRA court should have retroactively applied the United States Supreme Court's opinion in *Johnson v. California,* 545 U.S. 162, 125 S.Ct. 2410, 162 L.Ed.2d 129 (2005),[7] thereby concluding Appellant established a *prima facie* case of discrimination during jury selection and requiring Attorney DiSimone to explain on the record the reasons he used sixteen of his seventeen peremptory strikes to exclude African Americans from the jury. Appellant contends *Johnson* asserts a constitutional right, which was recognized well after the time period for Appellant to file a timely PCRA petition expired, and this Court should find the right applies retroactively.

¶ 21 In *Johnson,* the United States Supreme Court stated the following:

The issue in this case is narrow but important. It concerns the scope of the first of three steps this Court enumerated in *Batson,* which together guide trial courts' constitutional review of peremptory strikes. Those three *Batson* steps should by now be familiar. First, the defendant must make out a *prima facie* case "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." Second, once the defendant has made out a *prima facie* case, the burden "shifts to the State to explain adequately the racial exclusion" by offering permissible race-neutral justifications for the strikes. Third, "[i]f a race-neutral explanation is tendered, the trial court must then decide ... whether the opponent of the

---

6. As discussed *infra,* we would further note that Appellant cannot benefit from the Supreme Court's Opinion in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), since such does not apply retroactively in this case.

7. *Johnson* was filed on June 13, 2005, less than one month prior to Appellant filing the instant PCRA petition.

strike has provided purposeful racial discrimination."

The question before us is whether *Batson* permits California to require at step one that "the objector must show that it is more likely than not the other party's peremptory challenges, if unexplained, were based on impermissible group bias." Although we recognize that States do have flexibility in formulating appropriate procedures to comply with *Batson*, we conclude that California's "more likely than not" standard is an inappropriate yardstick by which to measure the sufficiency of a *prima facie* case.

*Johnson,* 545 U.S. at 168, 125 S.Ct. 2410 (quotations, quotation marks, citations, and footnote omitted).[8]

¶ 22 In explaining further the first step of *Batson,* the Supreme Court held in *Johnson* that:

Thus, in describing the burden-shifting framework, we assumed in *Batson* that the trial judge would have the benefit of all relevant circumstances, including the prosecutor's explanation, before deciding whether it was more likely than not that the challenge was improperly motivated. We did not intend the first step to be so onerous that a defendant would have to persuade the judge-on the basis of all the facts, some of which are impossible for the defendant to know with certainty-that the challenge was more likely than not the product of purposeful discrimination. Instead, a defendant satisfies the requirement of *Batson's* first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred.

*Johnson,* 545 U.S. at 170, 125 S.Ct. 2410.

¶ 23 As is evident from the aforementioned, the Supreme Court's Opinion in *Johnson* was a clarification of *Batson's* first step regarding what is necessary for a defendant to establish a *prima facie* case giving rise to an inference of discrimination. The appellate courts have held that *Batson* is to be applicable retroactively only to matters pending on direct appeal or not yet final at the time *Batson* was decided. *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987); *Commonwealth v. Sneed,* 587 Pa. 318, 899 A.2d 1067 (2006); *Commonwealth v. Freeman,* 573 Pa. 532, 550, 827 A.2d 385, 395 (2003); *Commonwealth v. Griffin,* 537 Pa. 447, 458 n. 4, 644 A.2d 1167, 1172 n. 4 (1994).

¶ 24 In the case *sub judice,* the Pennsylvania Supreme Court affirmed Appellant's judgment of sentence on November 5, 1981, and Appellant did not file a petition for a writ of *certiorari.* *Batson* was decided on April 30, 1986. Clearly, then, Appellant is not entitled to the retroactive application of *Batson.* Since *Johnson* is a mere clarification of the first prong of *Batson,* we conclude it is also not to be applied retroactively in this case.[9] Therefore, Ap-

---

8. In *Commonwealth v. Spotz,* 587 Pa. 1, 896 A.2d 1191 (2006), the Pennsylvania Supreme Court referred to *Johnson* at length in discussing an appellant's challenge to the prosecutor's exercising of peremptory challenges to strike prospective female jurors from the venire pool.

9. We note that, when Appellant was tried, the United States Supreme Court's Opinion in *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), was in effect.

In *Batson,* the Supreme Court overruled that portion of *Swain* concerning the evidentiary burden placed on a black criminal defendant who claimed that he was denied equal protection because of the existence of black prospective jurors. Under *Swain,* a black defendant was required to prove that a prosecutor systematically and consistently excluded blacks from participation in jury

pellant cannot benefit from the exception enunciated in Section 9545(b)(1)(iii).

¶ 25 For all of the aforementioned reasons, we conclude Appellant's July 7, 2005 PCRA petition was untimely filed and Appellant cannot benefit from any of the exceptions.[10]   Therefore, we affirm the PCRA court's dismissal thereof.

¶ 26 Affirmed.

service.  The new test announced in *Batson* placed the initial burden on the defendant to prove that a prosecutor purposefully struck potential jurors because of their race, and if satisfied, the burden would then shift to the prosecution to provide a race-neutral explanation for challenging black jurors.  *Batson* eased the equal protection burden by holding that the defendant need only show that the prosecution improperly exercised its peremptory challenges in his own case, rather than systematically over a number of cases.

*Sneed,* 587 Pa. at 330–331, 899 A.2d at 1075 (citations omitted).

10.  In light of the aforementioned, we find it unnecessary to remand this matter for a more thorough PCRA opinion and/or an evidentiary hearing regarding Appellant's July 7, 2005 PCRA petition.