COMMONWEALTH of Pennsylvania, Appellee

v.

Gary GREEN, Appellant.

Superior Court of Pennsylvania.

Submitted Oct. 18, 2010.

Filed Jan. 11, 2011.

Reargument Denied March 16, 2011.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: STEVENS, DONOHUE, and MUNDY, JJ.

OPINION BY STEVENS, J.:

Appellant, Gary Green, has filed this *pro se* appeal challenging the dismissal of his third Post Conviction Relief Act [1] (PCRA) petition. We affirm.

Green shot a man to death in 1988, and he was subsequently convicted of first degree murder, recklessly endangering another person, and possessing an instrument of crime, for which he was sentenced to life imprisonment. His sentence was affirmed by the Superior Court on August 21, 1990, and the Pennsylvania Supreme Court denied allocatur on January 23, 1991.

Appellant's first PCRA petition, filed on February 18, 1993, was denied by the PCRA court, whose order was affirmed by this Court on August 28, 1995. After the Pennsylvania Supreme Court refused to hear an appeal, Appellant filed his second PCRA petition on filed November 7, 1996. The subsequent denial of that petition was affirmed by a panel of this Court on October 17, 1997, and the Supreme Court again refused review.

The instant PCRA petition was filed on February 11, 2008.[2] Therein, Ap-

---

1. 42 Pa.C.S.A. §§ 9541–9546.

2. We note that Appellant's brief asserts that his third PCRA petition was filed on January 25, 2006, which would have been prior to the

disposition of his appeal of the denial of his second PCRA petition on October 17, 1997. This purported filing date is thus obviously incorrect, since a subsequent PCRA petition

pellant asserts that he is entitled to relief from his conviction and sentence "Because The Commonwealth Used Its Peremptory Jury Strikes In A Racially Discriminatory Manner, Thus Depriving Petitioner Of His Rights Under the Sixth, Eighth, And Fourteenth Amendments To The United States Constitution And The Corresponding Provisions Of The Pennsylvania Constitution," and further, that "[a]t the time of Petitioner's trial, it was the policy of the Philadelphia District Attorney's Office to discriminate against African–American venirepersons in jury selection," the existence of which policy was revealed by "the notes of a 1990 lecture conducted by the Director of Training of the District Attorney's Office." PCRA Petition filed 2/11/08 at 8 (capitalization in original). Thus Appellant's underlying claim is that the notes of the 1990 lecture prove that a violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), occurred during his 1989 trial.[3] PCRA Petition filed 2/11/08 at 1–2.

In denying Appellant's PCRA petition, the PCRA court explained as follows:

> Petitioner claims that he is entitled to collateral relief due to an alleged violation of [*Batson*]. Specifically, Petitioner alleges that the Philadelphia District Attorney's Office engaged in a policy of discrimination in jury selection as evidenced by notes taken from a lecture given by Assistant District Attorney Bruce Sagel ("Sagel") on August 14, 1990, which were publicized in a 1997 Philadelphia Magazine article. Under *Commonwealth v. Johnnie Lee Davis*,

[916 A.2d 1206 (Pa.Super.2007) ], our Superior Court has determined that the Sagel lecture is not relevant to any cases tried prior to the date that lecture was delivered. Therefore, since Petitioner's case was tried over a year prior to the date of the Sagel lecture, his claim is untimely and must be dismissed pursuant to 42 Pa.C.S. § 9545(b).

Memorandum and Order filed 5/8/09 at 2.

Appealing the dismissal of his third PCRA petition, Appellant raises the following two issues before this Court:

1. The Trial Court Erred In Its Dismissal Of A Racial Discrimination Claim Based Preliminarily On The Further Public Release Information Of The A.D.A. Jack Mchanon's [sic] Training Tape.

2. The Trial Court Erred In Its Dismissal Of Defendants [sic] Second/Subsequent Post Conviction Relief Act As Being Untimely Filed.

Appellant's brief at ii (capitalization in original).

█ We address these claims under a well-established standard. "Our review of a post-conviction court's grant or denial of relief is limited to determining whether the court's findings are supported by the record and the court's order is otherwise free of legal error. We will not disturb findings that are supported by the record." *Commonwealth v. Yager*, 454 Pa.Super. 428, 685 A.2d 1000, 1003 (1996) (citations omitted).

---

cannot be filed until the resolution of review of a pending PCRA petition by highest state court in which review is sought, or at the expiration of time for seeking such review. *Commonwealth v. Ligons*, 601 Pa. 103, 128, 971 A.2d 1125, 1140 (2009) (*citing Commonwealth v. Lark*, 560 Pa. 487, 746 A.2d 585, 588 (2000)).

**3.** *Batson* claims, which essentially attack a petitioner's underlying conviction, have been held to be within the ambit of the PCRA. *Commonwealth v. Hackett*, 598 Pa. 350, 363, 956 A.2d 978, 986 (2008).

Since Pennsylvania courts have repeatedly held that the PCRA's time limitations are jurisdictional, *Hackett*, 598 Pa. at 359, 956 A.2d at 983, we address Appellant's second allegation first, as our finding of untimeliness prevents our further review. A PCRA petition, including a second or subsequent petition, shall be filed within one year of the date the underlying judgment becomes final. 42 Pa.C.S.A. § 9545(b)(1); *Commonwealth v. Bretz*, 830 A.2d 1273, 1275 (Pa.Super.2003).[4] A judgment is deemed final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3). "[T]he plain language of the PCRA requires a claimant to 'allege' and 'prove' that his petition meets the jurisdictional time requirements." *Commonwealth v. Morris*, 573 Pa. 157, 176, fn. 4, 822 A.2d 684, 695, fn. 4 (2003) (*citing* 42 Pa.C.S. § 9545(b)(1)).

Here, there is no question that Appellant's third PCRA petition is facially untimely. His sentence was affirmed by a panel of this Court on August 21, 1990, and on January 23, 1991 the Supreme Court indicated that it would not hear an appeal in the matter. Thus, Appellant's judgment of sentence became final on January 23,

1991. The PCRA petition currently in question, Appellant's third, was filed on February 11, 2008—more than seventeen years after his sentence became final, and clearly beyond the one year time limitation.

Obviously cognizant of this fact, Appellant's third PCRA petition asserts that it should not be subject to the time requirements of Section 9545(b)(1), because Subsections 9545(b)(1)(i) and (ii), pertaining to the interference of governmental officials, and facts unknown and unascertainable, apply. PCRA Petition filed 2/11/08 at 5–6.[5] In this regard, Appellant specifically asserts:

The evidence upon which this Petition rests was within the knowledge and control of the District Attorney's Office, including inter alia the identity of the source, but was nor [sic] revealed by the Commonwealth until it was compelled to do so, under oath, on November 18, 2005. The Commonwealth was obliged to disclose this evidence of pervasive misconduct and a policy of illegal racial discrimination. Instead, the District Attorney's Office disputed the accuracy of the article and disclaimed the remarks attributed to Mr. Sagel. The Commonwealth's concealment of these notes, the identity of their source, and any other evidence regarding Mr. Sagel's training

---

**4.** Appellant's third PCRA petition, filed on February 11, 2008, is subject to the most recent amendments to the PCRA, effective January 16, 1996.

**5.** Section 42 Pa.C.S.A. § 9545(b)(1) states that:

Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:
(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution

or laws of this. Commonwealth or the Constitution or laws of the United States;
(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.
42 Pa.C.S.A. §§ 9545(b)(1)(i)-(iii).

seminar on jury selection interfered with Petitioner's ability to raise his present claims previously. As this Petition is filed within 60 days of obtaining Mr. Lentz's notes, it is timely under Section 9454(b)(2).[6]

Furthermore, this Petition is timely under the PCRA, as it is filed within 60 days of discovery of previously unavailable evidence of the policy and practice of the Philadelphia District Attorney's Office. The Petition is therefore timely under 42 Pa.C.S.A. § 9545(b)(1)(ii) ("the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence.") Mr. Lentz's notes were not previously discoverable with the exercise of due diligence.[7] In fact, Mr. Lentz's identity was not known, and could not have been discovered through reasonable diligence, until November 28, 2005, when it was disclosed by Mr. Sagel. With Mr. Lentz's identity revealed, a copy of the notes were reviewed.

PCRA Petition filed 2/11/08 at 5–6.

 The merits of Appellant's Section 9545(b)(1) claims aside, we find that he has not met the requirements of Section 9545(b)(2). As Appellant himself concedes, the Philadelphia Magazine article appeared in 1990, and the source of the article was revealed on November 28, 2005. PCRA petition filed 2/11/08 at 6. Thus, Appellant's third PCRA Petition, filed more than more than two years later, clearly was *not* "filed within 60 days of the date the claim could have been presented." 42 Pa.C.S.A. § 9545(b)(2).

Even if the 60 day requirement of Section 9545(b)(2) did not apply, however, reliance on the Sagel lecture has been repeatedly and emphatically rejected as a source for the relief Appellant seeks. *Commonwealth v. Marshall*, 596 Pa. 587, 947 A.2d 714, (2008);[8] *Commonwealth v. Per-*

6. Pursuant to Section 9545(b)(2) "[a]ny petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented." 42 Pa.C.S.A. § 9545(b)(2).

7. Former Philadelphia Assistant District Attorney Gavin Lentz was the source of the 1990 Philadelphia Magazine Article.

8. Marshall invoked Section 9545(b)(1)(i), pertaining to government interference, claiming that the Commonwealth concealed not only Lentz's notes, but also Lentz's identity as author of the notes, and other evidence regarding Sagel's lecture. *Marshall*, 596 Pa. at 597, 947 A.2d at 720. Finding that Marshall had provided no support for these allegations, the Pennsylvania Supreme Court explained:

There is simply no evidence that the notes were in the possession of or concealed by the Commonwealth. As Appellant points out, Mr. Sagel testified on November 28, 2005, in an unrelated federal habeas corpus proceeding, that "someone" had said the notes were made by Mr. Lentz. See Notes of Testimony ("N.T."), *Bond v. Beard*, Civil Action No. 02–cv–08592–JF (E.D.Pa.),

11/28/05, at 102. Mr. Lentz, who had left the employ of the District Attorney's Office at the end of 1991, then testified in the same Bond proceeding that the notes had indeed been made by him and that he had given the original notes to Mr. Bond's counsel in the Defender Association of Philadelphia. *Id.*, 12/1/05, at 4, 5. Counsel for Appellant in the instant case, who is also in the Capital Habeas Unit of the Defender Association of Philadelphia, acknowledged that immediately following Mr. Sagel's testimony in the Bond proceeding, counsel had contacted Mr. Lentz, who provided counsel with copies of the notes. Appellant presents only general, unsupported allegations—but offers no evidence—that the Commonwealth interfered with the presentation of his claims by somehow inhibiting his ability to discover Mr. Lentz's identity and to obtain his notes. Accordingly, we determine that Appellant can not satisfy his burden to prove that the government interference exception applies to his claim.

*Id.*, 596 Pa. at 597–598, 947 A.2d at 720–721.

Marshal also invoked Section 9545(b)(1)(ii), pertaining to after-discovered facts, contend-

*rin,* 947 A.2d 1284, (Pa.Super.2008);[9] *Commonwealth v. Johnson,* 945 A.2d 185 (Pa.Super.2008);[10] *Davis, supra.*[11]

ing that he was unable to present his claim until Sagel revealed Lentz as the author of the notes. *Id.,* 596 Pa. at 598, 947 A.2d at 721. As the Supreme Court noted, however, Marshall merely stated—without benefit of supporting argument—that, even if he had exercised due diligence, he could not have obtained the notes and thus could not have presented his claim prior to Sagel's testimony, yet Marshal provided no evidence or argument that Sagel refused to divulge the information that he possessed regarding the identity of the author of the notes prior to his testimony on November 28, 2005. *Id.* Finding that Marshall provided no evidence or argument that he could not have obtained the identity of the author of the notes from Sagel, or from another source, prior to Sagel's testimony, the Court concluded that he did not carry his burden under Section 9545(b)(2) to establish that he presented his claim within 60 days of the time it could first have been presented. *Id.,* 596 Pa. at 598–599, 947 A.2d at 721. Additionally, Marshal failed to acknowledge that the after-discovered facts exception focuses on *"facts, 'not on a newly discovered or newly willing source for previously known facts,'"* and thus the Court determined that he failed to demonstrate that his claim falls under Section 9545(b)(1)(ii). *Id.* (citing *Johnson, supra*). The Court further noted:

> The after-discovered "fact" on which Appellant relies is the contention, based on the Sagel and McMahon lectures, of a policy of racial discrimination in jury selection in the District Attorney's Office. The investigative report that discussed both lectures and concluded therefrom that a discriminatory policy was extant in the District Attorney's Office, was published in Philadelphia Magazine in June 1997, and thus was public knowledge prior to the filing of Appellant's supplemental petition on October 24, 1997, in support of his first request for PCRA relief, some eight years before Appellant filed the instant PCRA petition. Contrary to Appellant's assertion, Mr. Lentz's lecture notes are properly characterized as another source for the claim of a racially discriminatory policy in jury selection in the District Attorney's Office. As this Court made clear in Johnson, supra, the newly-discovered facts exception is *not* focused on newly discovered or newly willing sources for "facts" that were already known.

> On numerous occasions over the course of nearly a decade, this Court has addressed the claims, published by Philadelphia Magazine in 1997, of racial discrimination in jury selection within the Philadelphia District Attorney's Office. We have condemned the practices advocated in the McMahon videotape in the strongest terms. However, we have also consistently held that the McMahon videotape not only is insufficient to establish that the Philadelphia District Attorney's Office had a policy of racial discrimination in jury selection, but also does not constitute evidence in support of discrimination in individual cases where the Commonwealth was represented by prosecutors other than Mr. McMahon.

> Mr. Lentz's notes from Mr. Sagel's lecture are simply another, albeit more specific, source for the same general allegations of racial discrimination in jury selection in the Philadelphia District Attorney's Office that were leveled in 1997. Like the McMahon videotape, the notes do not establish a policy or general practice of racial discrimination in jury selection in the District Attorney's Office. The notes also are not relevant to the specifics of jury selection during Appellant's prosecution because they were produced after Appellant's trial and are not linked in any way to the prosecutor in Appellant's case.

*Id.,* 596 Pa. at 598–600, 947 A.2d at 721–722.

**9.** In rejecting Perrin's Section 9545(b)(1)(ii) claim that Lentz's notes established that it was the policy and practice of the Philadelphia District Attorney's Office to discriminate against African Americans by using preemptory challenges in jury selection, the Court in *Perrin* explained that "[t]his Court has already heard and rejected this argument." *Perrin,* 947 A.2d at 1285–1286 (citing *Davis, supra*).

**10.** Johnson unsuccessfully argued that he qualified for Section 9545(b)(1)(ii)'s exception due to the Sagel lecture. *Johnson,* 945 A.2d at 192.

**11.** Davis claimed that Lentz's notes were "newly-discovered evidence" establishing that it was the policy and practice of the Philadelphia District Attorney's Office to discriminate

For the foregoing reasons, we find that Appellant fails to qualify for an exception to the time requirements of the PCRA, and we hold that the PCRA court properly dismissed Appellant's third PCRA petition as untimely.

Order Affirmed.

against African Americans by using preemptory challenges in jury selection. *Davis,* 916

A.2d at 1209.