J-S08018-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KENNETH THOMAS | |
| Appellant | No. 1579 EDA 2014 |

Appeal from the PCRA Order of May 2, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0904651-2005

BEFORE:  DONOHUE, J., WECHT, J., and JENKINS, J.

MEMORANDUM BY WECHT, J.:                **FILED FEBRUARY 17, 2015**

Kenneth Thomas appeals the May 2, 2014 order dismissing his petition for relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46.  We affirm.

In an opinion prepared during Thomas' direct appeal, the court set forth the relevant factual history of this case as follows:

> On June 16, 2005, at about 2:00 a.m., Philadelphia Police Officer Stephen Johncola received a radio call that directed him to go to the 500 block of East Allegheny Avenue in Philadelphia to investigate a report of a shooting.  The officer, together with his partner [] immediately proceeded to that location where he observed a male, later identified as Keith Raney, lying on the sidewalk.  Mr. Raney[,] who was conscious and had blood on his shirt, told Officer [Johncola] that he had been shot on E Street by a man named Kenny who lived on Hurley Street.  Mr. Raney then lost consciousness.  He was taken by rescue squad to a nearby hospital where he subsequently died.

An autopsy was performed on the body of Mr. Raney on June 17, 2005. It revealed that Mr. Raney died as a result of having been shot multiple times.

Just prior to the shooting, Mr. Robert Eury was walking to a Chinese takeout restaurant located near his home. As he was proceeding to the restaurant he heard a gunshot and then saw Mr. Raney[,] who had been running, fall to the ground. [Thomas] immediately drove up in a white car, got out of it, and approached Mr. Raney who was lying face down on the pavement. As [Thomas] was standing over Mr. Raney, Mr. Eury heard three or more gunshots.

Following the shooting, Mr. Eury returned home. The police came to his residence shortly thereafter and took him to police headquarters. Once there, Mr. Eury gave [the] police a statement and had him look at [] photographs. He identified a photograph depicting [Thomas].

Mr. Shannon Shields also was present in the area where the shooting occurred. According to Mr. Shields, he was near the corner of Allegheny Avenue and Hartville Street when he heard gunfire and then saw Mr. Raney run by him. Mr. Raney was stumbling and had blood visible on his clothing. Raney continued running and stumbling for approximately a half of a block at which time Mr. Shields saw a white car being driven by [Thomas] drive by, and make a U-turn. Mr. Shields then heard a gunshot and saw Mr. Raney stumble and fall.

Raney, however, got up again and began stumbling up the street. Mr. Shields went home after witnessing this incident.

On June 22, 2005, Mr. Shields was interviewed by [the] police. During the interview, he identified a photograph of [Thomas as the driver of] the white car [on] the night of the incident.

An arrest warrant was issued for [Thomas] on June 25, 2005. He was arrested on June 27, 2005. After he was arrested, [Thomas] supplied the police with [] biographical information which included the fact that he owned a white 1990 Cutlass Supreme.

[Thomas] testified in his own defense. He [testified] that he was at home sleeping when Mr. Raney was shot and killed. He indicated that he got home at midnight after visiting his grandmother at the hospital. He further testified that Eury and

Shields identified him because they were envious of him because he had a car.

Trial Court Opinion, 3/8/2008, at 2-3.

Following a non-jury trial, Thomas was convicted of third-degree murder, carrying a concealed firearm without a license, and possessing an instrument of crime.[1]   On March 28, 2007, Thomas was sentenced to an aggregate term of twenty to forty years' incarceration.  Thomas did not file post-sentence motions, nor did he file a motion for reconsideration of his sentence.  On direct appeal, we affirmed the judgment of sentence on October 21, 2008.  *See Commonwealth v. Thomas*, No. 1591 EDA 2007, slip op. at 1, 3 (Pa. Super. Oct. 21, 2008).   Thomas did not file a petition for allowance of appeal with the Pennsylvania Supreme Court.

On February 11, 2009, Thomas filed a timely PCRA petition.  Counsel was appointed to represent Thomas.   On February 20, 2013, Thomas' counsel filed an amended PCRA petition.   The PCRA court subsequently issued a notice of its intent to dismiss Thomas' petition without a hearing pursuant to Pa.R.Crim.P. 907.   On May 2, 2014, the PCRA court formally dismissed the petition.

On May 20, 2014, Thomas filed a notice of appeal.  On May 27, 2014, the PCRA court directed Thomas to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  On May 29, 2014,

---

[1]   *See* 18 Pa.C.S. §§ 2502(c), 6106, and 907, respectively.

Thomas timely filed a concise statement. On June 9, 2014, the PCRA court issued an opinion pursuant to Pa.R.A.P. 1925(a).

Thomas raises the following issues for our consideration:

I. The PCRA court erred by denying PCRA relief because counsel failed to file a post-sentence motion and preserve the issue that the verdict for third-degree murder was against the weight of the evidence because the Commonwealth could not prove that [Thomas] acted with malice.

II. The PCRA court erred by denying PCRA relief because counsel was ineffective for failing to file a post-sentence motion for reconsideration of sentence and this issue was waived for appellate review pursuant to Pa.R.A.P. 302(a).

III. The PCRA court erred by failing to grant an evidentiary hearing even though there were material facts in dispute.

Brief for Thomas at 3.

Our "standard of review for an order denying post-conviction relief is limited to whether the record supports the post-conviction court's determination, and whether that decision is free of legal error." *Commonwealth v. Allen*, 732 A.2d 582, 586 (Pa. 1999). The PCRA court's findings "will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Johnson*, 945 A.2d 185, 188 (Pa. Super. 2008).

Both of Thomas' substantive claims implicate trial counsel's effectiveness. "[T]rial counsel is presumed to be effective and the burden to show otherwise lies with the [Appellant]." *Commonwealth v. Singley*, 868

A.2d 403, 411 (Pa. 2005) (citing *Commonwealth v. Jones*, 683 A.2d 1181, 1188 (Pa. 1996)). The test for ineffectiveness of counsel is as follows:

> [T]he appellant must overcome the presumption of competence by showing that: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different.

*Commonwealth v. Bomar*, 826 A.2d 831, 855 (Pa. 2003) (citing *Commonwealth v. Kimball*, 724 A.2d 326, 333 (Pa. 1999)). Failure to satisfy any prong of the above test will result in the rejection of the underlying claim. *Commonwealth v. Jones*, 811 A.2d 994, 1002 (Pa. 2002). If an appellant is unable to demonstrate prejudice, the other two elements need not be addressed. *Commonwealth v. Albrecht*, 720 A.2d 693, 701 (Pa. 1998). Additionally, a PCRA appellant must set forth and individually discuss substantively each prong of the ineffective assistance of counsel test. *See Commonwealth v. Jones*, 876 A.2d 380, 386 (Pa. 2005); *Commonwealth v. Wharton*, 811 A.2d 978, 988 (Pa. 2002) ("Claims of ineffective assistance of counsel are not self-proving. . . .").

In his brief, Thomas sets forth all of the applicable legal standards that apply to claims of ineffective assistance of counsel, including the three-part test set forth above. *See* Brief for Thomas at 12. However, Thomas does not address each of the three prongs meaningfully in discussing either of his two substantive claims. Consequently, both of the issues are waived. *See*

*Commonwealth v. Steele*, 961 A.2d 786, 797 (Pa. 2008) ("[U]ndeveloped claims, based on boilerplate allegations, cannot satisfy [the appellant's] burden of establishing ineffectiveness.") (citing *Jones*, 876 A.2d at 386; *Commonwealth v. Bracey*, 795 A.2d 935, 940 n.4 (Pa. 2001)).

In his argument that counsel was ineffective for failing to file a post-sentence motion raising a challenge to the weight of the evidence, Thomas addresses at length the standards applicable to a weight challenge, and argues that the verdict in fact was against the weight of the evidence. Thomas also notes that he requested counsel to file the motion, and that counsel failed to do so. *See* Brief for Thomas at 15-21. Thus, Thomas adequately has addressed the arguable merit prong. However, Thomas makes only passing references to the prejudice prong, *id.* at 21-22, and he presents no discussion whatsoever addressing the reasonable basis prong. Consequently, we must deem this issue to be waived. *See Steele*, *supra*.

Thomas also fails to execute the three-prong ineffectiveness test in his argument that trial counsel was ineffective for failing to file a motion to reconsider his sentence. Once again, Thomas addresses the merits of his underlying claim extensively, *see* Brief for Thomas at 23-27, but addresses only two of the three prongs of the test. The entirety of his discussion of the three prongs consists of the following statement: "Pursuant to the standard

set forth in **Strickland/Pierce**,[2 Thomas] has met his burden to prove that he has raised a meritorious claim and that he was prejudiced by his counsels' failure to file a post-sentence motion."  Brief for Thomas at 27. Such boilerplate assertions are insufficient to overcome the burden of demonstrating that counsel was ineffective.  **See Steele**, *supra*.  Moreover, Thomas does not address the reasonable basis prong at all.  Again, we must deem this issue to be waived in light of Thomas' briefing failures.

In his last issue, Thomas argues that the PCRA court erred by not holding an evidentiary hearing.  **See** Brief for Thomas at 27-30.  As a general matter, "a PCRA court may decline to hold a hearing on the petition if the PCRA court determines that a petitioner's claim is patently frivolous and is without a trace of support in either the record or from other evidence."  **Commonwealth v. Jordan**, 772 A.2d 1011, 1014 (Pa. Super. 2001).  Because Thomas has failed to demonstrate that his claims are meritorious, the PCRA court did not err in declining to hold an evidentiary hearing.

Order affirmed.

---

2    **Strickland v. Washington**, 466 U.S. 668 (1984); **Commonwealth v. Pierce**, 527 A.2d 973 (Pa. 1987).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>2/17/2015</u>