J-S68025-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CEASAR TRICE | : | |
| | : | |
| Appellant | : | No. 684 WDA 2019 |

Appeal from the PCRA Order Entered April 24, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0018839-2006

BEFORE:   GANTMAN, P.J.E., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED JANUARY 8, 2020**

Ceasar Trice appeals from the order, entered in the Court of Common Pleas of Allegheny County, dismissing as untimely his second petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. Upon careful review, we affirm.

This Court, in assessing Trice's previous PCRA petition, recounted the factual basis for Trice's convictions as follows:

> The factual background of this case arises from a dispute between a drug dealer and his customers.  Trice, who was a juvenile at the time, was a regular supplier of drugs to the residents of a home in West Mifflin Borough ("the Cardamone home").  Dominic Cardamone resided in a third floor, attic apartment with his significant other, Heidi Stipetich.  Their son, John Cardamone, then 27, lived on the second floor with his girlfriend, Kimmerly Messenger.  John's brother, Aaron Cardamone, then 25, lived in a

---

[*] Retired Senior Judge assigned to the Superior Court.

separate room on the same floor, while a friend of the family, Heidi Schindler, slept in the living room on the first floor.

In the early morning of November 25, 2006, Trice made a sales call to the Cardamone home. However, instead of consummating the transaction, John Cardamone and Kimmerly Messenger took him to the second floor and severely beat him, taking $150 in cash as well as his narcotics. Trice left the Cardamone home and was eventually transported to a nearby hospital to have the wound in his head closed with nine staples.

While Trice was being treated, a colleague, Dejuan Mitchell [(Dejuan)], took a gun and shot at the second and third story windows of the Cardamone home. No one was injured in the shooting, and [Dejuan] left the scene.

Shortly thereafter, police arrived on the scene, responding to a "shots fired" report. Officers observed bullet holes in the Cardamone home, and knocked on the door. None of the residents answered immediately, as they were all in the third floor apartment, with at least a few getting high on narcotics stolen from Trice. Eventually, Stipetich went to the door and told police that she had not contacted police because she couldn't find her phone, and furthermore, that she had no idea regarding the identity of the shooter.

The police left the scene, and the residents of the Cardamone home eventually fell asleep. However, at some time after 9 a.m., Heidi Schindler, who was sleeping in the first floor living room, was woken by three intruders. One of the intruders, Anthony Nelson, held a rifle to Schindler's mouth and ordered her to sit up. Another intruder, [Dejuan], told Nelson leave Schindler alone, as "she had nothing to do with this." After [Dejuan] and Nelson went upstairs, Schindler heard approximately twelve shots fired, and then saw [Dejuan] and Nelson run back down the stairs. She was unsure if the third intruder, whom she could not identify, had gone upstairs with Nelson and [Dejuan], or whether he had remained downstairs.

[Dejuan] testified that after Trice returned from the hospital, he asked Nelson and [Dejuan] to accompany him to the Cardamone home to retrieve his property. After the three broke into the house and confronted Schindler, Nelson passed the gun to Trice, and [Dejuan] and Trice proceeded upstairs. [Dejuan] stated that

while he was searching Aaron Cardamone's room, Trice came in and shot Aaron several times. [Dejuan] fled down the stairs, hearing more gun shots as he fled.

Kimmerly Messenger and John Cardamone also suffered significant gunshot injuries but survived the assault. Aaron Cardamone was pronounced dead at the hospital from the gunshot wounds he received.

Trice was subsequently arrested and charged with one count of homicide and various other crimes arising from the incident.

*Commonwealth v. Trice*, 1321 WDA 2014, 1–3 (Pa. Super. Nov. 2, 2015) (unpublished memorandum).

On July 9, 2008, following trial, a jury convicted Trice of one count of third-degree murder, two counts of aggravated assault, and one count of criminal trespass. On October 16, 2008, the trial court sentenced Trice to an aggregate sentence of 32 to 64 years' imprisonment. Trice failed to file post-sentence motions, but filed a timely direct appeal. This Court affirmed his judgment of sentence on July 8, 2011. *Commonwealth v. Trice*, 1932 WDA 2008 (Pa. Super. July 8, 2011). Trice did not petition our Supreme Court for allowance of appeal.

On June 11, 2012, Trice filed a *pro se* PCRA petition. The PCRA court appointed counsel, who, on December 6, 2013, filed an amended petition alleging the ineffectiveness of trial and appellate counsel. Following a hearing, the PCRA court dismissed the amended petition. Trice timely appealed, and on November 15, 2015, we affirmed the PCRA court's decision. *Commonwealth v. Trice*, 1321 WDA 2014 (Pa. Super. Nov. 2, 2015)

(unpublished memorandum). Our Supreme Court denied Trice's petition for allowance of appeal on March 22, 2016. ***Commonwealth v. Trice***, 134 A.3d 56 (Pa. 2016) (Table).

Trice filed a second *pro se* petition on January 29, 2018, prompted by Damile Qui Mitchell (Damile)—Dejuan's cousin and Trice's fellow inmate at SCI Albion[1]—handing Trice a sworn affidavit, in which Damile took responsibility for the shooting at the Cardamones' house. ***See*** PCRA Petition, 1/29/18, at 3 (asserting relief based on Dimile's affadavit); ***see also*** Affidavit, 1/11/18, at 1 ("It was I, Damile Qui Mitchell[,] who shot those 3 people in that house in West[ M]ifflin, not [Trice.]"). The affidavit, however, named Trice as Damile's co-conspirator. ***See id.*** ("We went to the back door and Caesar started knocking and no one answered. He then kicked in the glass that was on the door to unlock it. Then that's when we went in.").

The PCRA court appointed counsel, who filed an amended PCRA petition on June 18, 2018. The PCRA court held a hearing on February 26, 2019 at which Damile was the lone witness. Damile testified he had not had any contact with Trice prior to preparing the affidavit. At the hearing, Damile's testimony deviated slightly from the version of events in his affidavit. He claimed Trice never entered the Cardamones' house, though he confirmed

---

[1] Damile was sentenced to a lifetime term of incarceration for an unrelated murder conviction.

Trice was present. *See* N.T. PCRA Hearing, 2/26/13, at 19–20 (stating Trice remained outside Cardamone's house while Damile and Dejuan entered).

On April 24, 2019, the PCRA court dismissed the petition as untimely, concluding Trice failed to plead and prove an exception to the PCRA time bar. Trice timely appealed. Both Trice and the PCRA court complied with Pa.R.A.P. 1925.

Trice raises the following claims for our review:

1) Whether the PCRA [c]ourt erred in concluding that the PCRA [p]etition was untimely and that [the PCRA court] lacked jurisdiction, where [Trice] filed his [p]etition within sixty days of receiving an exculpatory affidavit from the actual shooter establishing [Trice's] innocence[,] where this exculpatory information and testimony was completely unavailable until after the affidavit and its exculpatory information had been delivered to [Trice] by the affiant[,] and where there was no lack of due diligence[?]

2) Whether the PCRA [c]ourt erred in concluding that [Damile's] testimony did not constitute after[-]discovered evidence where it was discovered after trial and could not have been obtained prior to trial by the exercise of reasonable diligence[,] it was not merely corroborative or cumulative[,] it would not be used solely for impeachment purposes, and it is of such an exculpatory nature that a different verdict would likely result if a new trial were granted[?]

Brief of Appellant, at 6.

Generally, a petition for relief under the PCRA must be filed within one year of the date the judgment of sentence becomes final unless the petitioner alleges, and proves, an exception to the time for filing the petition, set forth

at 42 Pa.C.S.A. §§ 9545(b)(1)(i), (ii), and (iii).[2] A PCRA petition invoking one of these statutory exceptions must "be filed within 60 days of the date the claims could have been presented." **See Commonwealth v. Hernandez**, 79 A.3d 649, 651-52 (Pa. Super. 2013) (citations omitted); **see also** 42 Pa.C.S.A. § 9545(b)(2).[3]

Trice's judgment of sentence became final on August 8, 2011 when the period for seeking review with our Supreme Court ended. **See** 42 Pa.C.S.A.

_____

[2] The exceptions to the timeliness requirement are:

(i) the failure to raise the claim previously was the result of interference of government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States.

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. §§ 9545(b)(1)(i), (ii), and (iii).

[3] On October 24, 2018, the General Assembly amended subsection 9545(b)(2) to enlarge the time in which a petitioner may invoke a PCRA time-bar exception from 60 days to one year from the date the claim arises. **See** Act 2018, Oct. 24, P.L. 894, No. 146, § 2, effective in 60 days [Dec. 24, 2018]. However, the amendment applies only to claims arising on December 24, 2017, or thereafter. **Id.** at § 3. As discussed further **supra**, Trice's asserted grounds for relief, that Damile was the actual shooter, is a claim which could have been presented at trial in July of 2008; consequently, the 60-day limit applies.

§ 9545(b)(3) ("[A] judgment becomes final at the conclusion of direct review, including discretionary review in . . . the Supreme Court of Pennsylvania, or a the expiration of time for seeking the review."); *see also* Pa.R.A.P. 1113(a) (allowing 30 days from entry of order to file petition for allowance of appeal with Pennsylvania Supreme Court); *see also* 1 Pa.C.S.A. § 1908 (omitting last day from computation period when it falls on weekend or holiday). Therefore, Trice had one year, until August 8, 2012, to file a timely PCRA petition. Trice's instant petition, filed on January 29, 2018, is facially untimely. Unless Trice can plead and prove the application of an enumerated exception to the PCRA time bar, no court has jurisdiction to address the merits of his claim. *See Hernandez*, *supra* at 651-52.

Trice asserts his claims fall under the newly-discovered evidence exception. *See* Brief of Appellant, at 22 (citing Section 9545(b)(1)(ii)). We have previously expounded on Section 9545(b)(1)(ii)[4] as follows:

---

[4] We note with disfavor that both the PCRA court and the Commonwealth mistakenly apply the four-factor test for obtaining PCRA relief on the merits as dictated by 42 Pa.C.S.A. § 9543(a)(2)(vi), and not the two-factor test for determining whether the PCRA court has jurisdiction to hear a facially untimely PCRA petition under Section 9545(b)(1)(ii). *See* Pa.R.A.P. 1925(a) Opinion, 7/15/19, at 8–9 (citing incorrect four-factor test); *see also* Brief of Appellee, at 17 (citing incorrect four-factor test).

Our Supreme Court noted the distinction between the two tests as follows:

> When considering a claim seeking to invoke section 9545(b)(1)(ii), the petitioner must establish only that (1) the facts upon which the claim was predicated were unknown and (2) they

- 7 -

could not have been ascertained by the exercise of due diligence. We have unequivocally explained that the exception set forth in subsection (b)(1)(ii) does not require any merits analysis of the underlying claim. Rather, the exception only requires a petitioner to prove that the facts were unknown to him and that he exercised due diligence in discovering those facts.

Once jurisdiction has been properly invoked (by establishing either that the petition was filed within one year of the date judgment became final or by establishing one of the three exceptions to the PCRA's time bar), the relevant inquiry becomes whether the claim is cognizable under the PCRA. Section 9543, titled "[e]ligibility for relief," governs this inquiry. Among other requirements not pertinent to this appeal, section 9543 delineates seven classes of allegations that are eligible for relief under the PCRA. Of relevance here is the "after-discovered evidence" provision, which states that a claim alleging "the unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced" is cognizable under the PCRA. 42 Pa.C.S.A. § 9543(a)(2)(vi). To establish such a claim, a petitioner must prove that (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict.

A comparison of this four[-]factor test to the two[-]factor section 9545(b)(1)(ii) timeliness exception test reveals a superficial resemblance, as both involve consideration of whether the facts or evidence upon which the claim is based were previously unknown to the petitioner and whether that information could have been discovered earlier, through the exercise of due diligence. Indeed, the section 9545(b)(1)(ii) timeliness test appears to be encompassed within the first factor of the section 9543(a)(2)(vi) eligibility test. [We have] cautioned against the conclusion that there is an overlap between these provisions and reiterated that they remain distinct inquiries.

*Commonwealth v. Cox*, 146 A.3d 221, 227–30 (Pa. 2016) (some citations and quotations omitted).

> The newly[-]discovered facts exception, Section 9545(b)(1)(ii), relates to whether a court has jurisdiction to consider an untimely petition. It does not require a merits analysis. A petitioner satisfies the newly[-]discovered facts exception when the petitioner pleads and proves[:] (1) the facts upon which the claim is predicated were unknown[;] and (2) could not have been ascertained by the exercise of due diligence.

**Commonwealth v. Hart**, 199 A.3d 475, 481 (Pa. Super. 2018) (citations and quotations omitted).

Due diligence demands petitioners take reasonable steps to protect their own interests. **See Commonwealth v. Carr**, 768 A.2d 1164, 1168 (Pa. Super. 2001). "This rule is strictly enforced." **Commonwealth v. Monaco**, 996 A.2d 1076, 1080 (Pa. Super. 2010). "The focus of the exception is on the newly[-]discovered *facts*, not on a newly[-]discovered or newly willing source for previously known facts." **Commonwealth v. Marshall**, 947 A.2d 714, 720 (Pa. 2008). This Court will not grant relief under section 9545(b)(1)(ii) where the ostensible "newly[-]discovered" evidence comes in the form of a witness offering facts which were previously known to the petitioner at the time of trial and left unexamined. **See Commonwealth v. Johnson**, 945 A.2d 185, 190–91 (Pa. Super. 2008) (declining to apply section 9545(b)(1)(ii) where petitioner offered facts concerning his dealings with co-conspirator which did not offer new information); **and compare Commonwealth v. Brown**, 111 A.3d 171, 178 (Pa. Super. 2015) (finding petitioner failed to exercise due diligence where he "made no claim that he attempted to contact [the purported exculpatory witness] at any point since trial to determine

whether [the witness] had any information regarding the day of the shooting.") **with Hart**, **supra** at 841 (finding petitioner properly invoked section 9545(b)(1)(ii) where petitioner did not know of the existence of letters not disclosed by Commonwealth during discovery and asserted letters could not have been obtained through due diligence as they were stored in restricted access files.).

Whether one credits the facts gleaned from Damile's affidavit or his testimony—sources which offer an inconsistent account insofar as whether Trice entered the Cardamones' house—Trice's evidence unequivocally places him with Damile at the Cardamones' house during the shootings. **See** Affidavit, 1/11/18, at 1 ("We went to the back door and Caesar started knocking and no one answered. He then kicked in the glass that was on the door to unlock it. Then that's when we went in."); **see also** N.T. PCRA Hearing, 2/26/13, at 19–20 (stating Trice remained outside the Cardamone's house while Damile and Dejuan entered). Trice's argument, that Damile's role in the shootings was previously unknown to him, is, therefore, on its own terms, nonsensical. **See** Brief of Appellant, at 22 ("The exculpatory evidence was completely unavailable until after the affidavit was made public by [Damile] handing [the affidavit] to Trice. . . . The affidavit averred new facts including that it was solely Mitchell who had shot the three victims inside the house[.]"). As Trice pleaded facts which were previously known to him and were discoverable with the exercise of due diligence, he cannot circumvent

the PCRA's time bar under Section 9545(b)(1)(ii). ***See Johnson***, ***supra*** at 190–91; ***see also Brown***, ***supra*** at 178.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/8/2020