J-S51012-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
VINCENT LEACH :
:
Appellant : No. 90 EDA 2017

Appeal from the PCRA Order November 28, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002657-2012,
CP-51-CR-0002658-2012

BEFORE:  DUBOW, J., NICHOLS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY DUBOW, J.:                    **FILED NOVEMBER 21, 2018**

Appellant, Vincent Leach, appeals from the November 28, 2016 Order entered in the Philadelphia County Court of Common Pleas dismissing his first Petition filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546.  After careful review, we adopt the PCRA court's Pa.R.A.P. 1925(a) Opinion as our own and affirm.

The relevant facts and procedural history are as follows.  On August 7, 2011, Appellant shot Yavonne Burch and Keimyra Devine, killing Burch and injuring Devine in the leg.  Multiple witnesses, including Devine, Frank Mitchell, and Natalie Brown, identified Appellant as the shooter.

On September 20, 2011, police arrested Appellant and the Commonwealth charged him with First-Degree Murder, Firearms Not to be Carried Without a License, Carrying Firearms in Public in Philadelphia, Persons

Not to Possess Firearms, and Possessing an Instrument of Crime ("PIC").[1] At a separate docket, the Commonwealth charged Appellant with Aggravated Assault, Simple Assault, Attempted Murder, and Recklessly Endangering Another Person ("REAP").[2]

Relevant to the instant appeal, prior to Appellant's trial, the parties discussed the admissibility of an October 27, 2011 telephone call, recorded by prison authorities while Appellant was in custody awaiting trial. In the call, Appellant told a woman, who the Commonwealth asserted was Appellant's friend Rachel Levocz, "It's my fault. If I was back there, I would have taken care of everything like I was supposed to. I fucked up. I fucked up. My bad." N.T., 8/20/13, at 4-5. Appellant's counsel objected to the admission of the recording on relevance and prejudice grounds. The following day, just prior to the start of trial, the court ruled that both parties could play the tape.

The Commonwealth did not play the tape during its case-in-chief. It did, however, introduce the tape to rebut Appellant's testimony that he did not recall the conversation recorded in the tape. Appellant's counsel responded: "I guess we already had this argument. I would object to that." N.T. 8/22/13, at 4.

---

[1] 18 Pa.C.S. §§ 2502; 6106; 6108; 6105; and 907, respectively.

[2] 18 Pa.C.S. §§ 2702; 2701; 2502; and 2705, respectively.

On sur-rebuttal, Appellant testified that the recorded conversation was actually between him and a woman, Erica, and that he was apologizing for missing her birthday, not admitting to the crimes. *Id.* at 45-46.

On August 22, 2013, a jury convicted Appellant of First-Degree Murder, Firearms Not to be Carried Without a License, Carrying Firearms in Public in Philadelphia, PIC, Attempted Murder, and Aggravated Assault. That same day, the trial court sentenced Appellant to life imprisonment without parole for the Murder conviction, and concurrent terms of imprisonment for the other convictions.

This Court affirmed Appellant's Judgment of Sentence on August 15, 2014, and the Pennsylvania Supreme Court denied Appellant's Petition for Allowance of Appeal on December 23, 2014. *See Commonwealth v. Leach*, 106 A.3d 162 (Pa. Super. 2014) (unpublished memorandum), *appeal denied*, 104 A.3d 524 (Pa. 2014).

On July 28, 2015, Appellant filed the instant *pro se* PCRA Petition, in which he challenged the effectiveness of his trial counsel. The PCRA court appointed counsel who filed an Amended PCRA Petition on July 20, 2016. In his Amended Petition, Appellant claimed his trial counsel was ineffective for failing to object to the admission of the prison phone recording because the Commonwealth did not comply with the notice requirements of 18 Pa.C.S. §

5720[3] and because the voices on the phone call were not properly identified. Amended Petition, 7/20/16, at 2 (unpaginated).

On October 20, 2015, the PCRA court issued a Notice of Intent to Dismiss Appellant's PCRA Petition without a hearing pursuant to Pa.R.Crim.P. 907. Although represented by counsel, on November 7, 2016, Appellant filed a *pro se* Response to the PCRA court's Rule 907 Notice. The PCRA court complied with **Commonwealth v. Jette**, 23 A.3d 1032, 1044 (Pa. 2011), by forwarding Appellant's *pro se* Response to counsel. Counsel took no further action.

On November 28, 2016, the PCRA court dismissed Appellant's Amended Petition without a hearing. This timely appeal followed. Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant raises the following two issues on appeal:

1. Was trial counsel ineffective for failing to raise an objection to [Appellant's] prison phone call pursuant to 18 Pa.C.S. § 5720?

2. Was trial counsel ineffective for failing to object to the prison tape when the parties to the conversation had not be identified?

Appellant's Brief at 3.

This Court's "standard of review for an order denying post-conviction relief is limited to whether the trial court's determination is supported by evidence of record and whether it is free of legal error." **Commonwealth v.**

---

[3] Section 5720 requires, in relevant part, that the Commonwealth give a defendant at least 10 days' notice of the fact and nature of any intercepted communication it intends to disclose at trial. 18 Pa.C.S. §5720.

*Allen*, 732 A.2d 582, 586 (Pa. 1999). Further, "[t]he PCRA court's findings "will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Johnson*, 945 A.2d 185, 188 (Pa. Super. 2008) (citation omitted).

The law presumes counsel has rendered effective assistance. *Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa. Super. 2010). "[T]he burden of demonstrating ineffectiveness rests on [A]ppellant." *Id.* To satisfy this burden, Appellant must plead and prove by a preponderance of the evidence that: "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different." *Commonwealth v. Fulton*, 830 A.2d 567, 572 (Pa. 2003). Failure to satisfy any prong of the test will result in rejection of the appellant's ineffective assistance of counsel claim. *Commonwealth v. Jones*, 811 A.2d 994, 1002 (Pa. 2002).

In each issue, Appellant challenges the effective assistance of counsel. First, he claims his trial counsel was ineffective for failing to object under 18 Pa.C.S. § 5720 to the admission of the recorded jailhouse phone call. Appellant's Brief at 9. In particular, Appellant claims that had his counsel objected on this basis, the trial court would have excluded the recording. *Id.* He baldly claims that his counsel had no reasonable basis for failing to object,

that the contents of the call were highly prejudicial, and that the call's admission clearly affected the outcome of the cause. *Id.*

In his second issue, Appellant claims his counsel was ineffective for failing to object to admission of the recorded call on the basis that the parties to the conversation had not been identified. *Id.*

The Honorable Barbara A. McDermott, who presided over all of the proceedings in this case, has authored a comprehensive, thorough, and well-reasoned Opinion, citing to the record and relevant case law in addressing Appellant's challenges to his counsel's representation. After a careful review of the parties' arguments and the record, we adopt the PCRA court's Opinion as our own and conclude that Appellant's issues warrant no relief. *See* PCRA Ct. Op., 11/28/16, at 4-8 (concluding that Appellant's ineffectiveness claims fail because: (1) Appellant failed to establish that the trial court would have excluded the recorded call if his counsel had objected on timeliness grounds; (2) the court took proper action to cure the Section 5720 violation by permitting Appellant and counsel to hear the tape prior to its admission; (3) Appellant identified himself as one of the parties on the phone call; (4) the Commonwealth presented sufficient circumstantial evidence to identify Rachel Levocz as the woman on the phone call; and (5) because of the overwhelming evidence, suppression of the audiotape would not have precluded the jury from convicting him). Accordingly, we affirm the denial of PCRA relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/21/18

**FILED**

NOV 28 2016

Appeals/Post Trial
Office of Judicial Records

**IN THE COURT OF COMMON PLEAS**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**CRIMINAL TRIAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA      : CP-51-CR-0002657-2012
                                  : CP-51-CR-0002658-2012
                                  :

v.                             .

CP-51-CR-0002657-2012 Comm. v. Leach, Vincent
Opinion

VINCENT LEACH



7869074901

**ORDER AND OPINION**

**McDermott, J.**                                            **November 28, 2016**

**Procedural History**

On September 20, 2011, the Petitioner, Vincent Leach was arrested and charged with murder and related offenses in CP-51-CR-0002658-2012 and Attempted Murder and Aggravated Assault in CP-51-CR-0002657-2012. On August 20, 2013, the Petitioner appeared before this Court and elected to be tried by a jury. On August 22, 2013, the jury convicted the Petitioner of First-Degree Murder, Firearms Not to be Carried Without a License, Carrying Firearms in Public in Philadelphia, and Possession of an Instrument of Crime ("PIC") in CP-51-CR-0002658-2012, and Attempted Murder and Aggravated Assault in CP-51-CR-0002657-2012.

That same date, this Court imposed total sentence of life imprisonment without parole for the instant charges. On September 11, 2013, the Petitioner appealed, and on August 15, 2014, the Superior Court affirmed the judgment of sentence. On December 23, 2014, the Pennsylvania Supreme Court denied the Petitioner's Petition for Allowance of Appeal.

On July 28, 2015, the Petitioner filed a timely *pro se* Post-Conviction Relief Act ("PCRA") petition. On April 11, 2016, PCRA counsel entered his appearance. On July 20, 2016, the Petitioner, through counsel, filed an Amended Petition. On October 11, 2016, the

Commonwealth filed a Motion to Dismiss. On October 20, 2015, this Court found the

Petitioner's claims meritless and filed a Notice of Intent to Dismiss pursuant to Pa.R.Crim.P.

907. On November 7, 2016, the Petitioner, *pro se*, responded to this Court's Rule 907 Notice.[1]

PCRA counsel did not file a response to this Court's Rule 907 Notice.

## Facts

On direct appeal, the Superior Court recited the facts of the case as follows:

> On August 7, 2011, around 3:30 p.m., in response to a radio call, Philadelphia Police Officer James Martin arrived at 2245 East Ann Street. Officer Martin observed a fire paramedic unit giving emergency assistance on the street to Yavonne Burch who had been shot in the head. Officer Martin spoke to Keimyra Devine who was sitting on the steps of 2245 East Ann Street. Devine indicated that she had been shot in the leg. Devine was transported to Temple University Hospital. Burch died that same day.
>
> According to Dr. Marlon Osbourne, an Assistant Medical Examiner and an expert in forensic pathology, Burch died from multiple gunshot wounds. Burch was shot in the head, neck, torso, back, and suffered abrasions to the forehead and nose. Burch suffered injuries to the right lung, aorta, spinal cord, and brain. Because of the stipple present on the gunshots to torso and neck, Dr. Osbourne concluded that the shots had been fired within three feet or less of Burch. Because both soot and stipple were present near the gunshot wound to the head, Dr. Osbourne concluded the shot was fired within one foot of Burch.
>
> Police Officer Christopher Reed, of the Crime Scene Unit, arrived on the scene at 4:55 p.m. From the 2200 block of Ann Street, Officer Reed recovered a projectile, a copper-jacketed fragment, and five .380–caliber fired cartridge casings.
>
> According to Police Officer Ronald Weitman, an expert in firearms identification, the five fired cartridge casings recovered from the scene were .380–caliber. The four bullets recovered from the victim's body were all .380–caliber and were fired from the same firearm.

---

[1] Petitioner is currently represented by counsel. Upon receipt of the Petitioner's *pro se* response to this Court's Rule 907 Notice, this Court forwarded the Petitioner's motion to counsel and took no further action. *See Commonwealth v. Hall*, 476 A.2d 7, 9–10 (Pa. Super. 1984) ("An accused's *pro se* actions have no legal effect while defense counsel remains authorized to represent the accused in all aspects of the proceedings."); *Commonwealth v. Jette*, 23 A.3d 1032, 1044 (Pa. 2011) ("The proper response to any *pro se* pleading is to refer the pleading to counsel, and to take no further action on the *pro se* pleading unless counsel forwards a motion.").

Evidence linking [Petitioner] to the malfeasance of August 7, 2011, was elicited from five witnesses. Rachel Levocz testified that she became acquainted with [Petitioner] in the spring of 2011 and spent almost every day with him for two to three months. The relationship was based upon Levocz's drug habit. [Petitioner] would provide heroin to Levocz and, in exchange, she would occasionally drive [Petitioner] around Philadelphia. At one point, Levocz expressed a desire to "get clean," and [Petitioner] responded that he would no longer supply her with drugs. He also represented that if anybody else delivered drugs to her "he would take care of them." Two days before the subject crimes occurred, Levocz's resolve to kick her drug habit dissipated, but [Petitioner] refused to give her heroin. Levocz became angry, left [Petitioner], and refused to accept his telephone calls.

Following the argument, Levocz went to Yavonne Burch's house at 2245 Ann Street to rent her vehicle in exchange for drugs. On the day of the murder, she was upstairs in Burch's house. When she learned that Burch had been killed, Levocz telephoned [Petitioner] and inquired as to his whereabouts. [Petitioner] replied that he was at his mother's house. Although they continued to communicate by telephone, Levocz did not see [Petitioner] again until September 20, 2011, the day of his arrest.

Keimyra Devine related that on August 7, 2011, she was sitting on the steps with Burch when a man approached and asked about a car that was rented. When Burch replied that she did not have the vehicle, the man informed her that the car was not to be rented that day and then called for two others to join him. He told his companions that he "broke [his] fast" and that he was "going to [SCI] Graterford today." The man then pulled out a gun and shot four or five times, killing Burch and wounding Devine.

When Devine was discharged from the hospital later that day, she was taken to the homicide division to give her statement. At that time, she identified [Petitioner] as the gunman from a photo array. She also identified [Petitioner] as the shooter at the preliminary hearing held on February 29, 2012.

Frank Mitchell, Burch's teenage neighbor, testified that on the day of the crimes, he observed his friends, [Petitioner] and Burch, talking. After he greeted them and began walking away, he heard gunshots and ran back to his house. While running, he saw [Petitioner] firing his gun towards Burch. The next day, Mitchell gave his statement to the police and identified [Petitioner] in a photo array as the person firing the gun.

Natalie Brown also was a witness to the events of August 7, 2011. Although at trial Brown initially represented that she did not remember what occurred that day, she proceeded to recount that she

3

and her friend, Natasha Parker, were in Brown's car when she heard gunshots and saw two men running. One of the men held a gun, walked in front of Brown's car, and looked directly at her. The following day, Brown was interviewed by the police, and she identified [Petitioner] as that man from a photo array.

Natasha Parker, Brown's passenger on August 7, 2011, recalled that Brown slowed down her vehicle because they heard an argument outside of the car. Parker heard three or four gunshots and observed three or four men running. Although Parker did not see the shooting, she saw one man put something in his pocket. After being shown a photo array, Parker identified that person as [Petitioner].

*Commonwealth v. Leach*, 2618 EDA 2013 (Pa. Super. Aug. 15, 2014) (non-precedential decision) (citations omitted).

## Discussion

The Petitioner alleges that trial counsel was ineffective for failing to object to the admission of a prison phone recording when the Commonwealth failed to: (1) comply with the 18 Pa.C.S. § 5720 notice requirement, and (2) properly identify the speakers. To warrant relief based on an ineffectiveness claim, a petitioner must show that such ineffectiveness "in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Bardo*, 105 A.3d 678, 684 (Pa. 2014); 42 Pa.C.S. § 9543(a)(2)(ii). Counsel is presumed to have rendered effective assistance. *Commonwealth v. Weiss*, 81 A.3d 767, 783 (Pa. 2013) (*citing Commonwealth v. Sepulveda*, 55 A.3d 1108, 1117 (Pa. 2012)).

To overcome the presumption, the Petitioner has to satisfy the performance and prejudice test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The Supreme Court of Pennsylvania has applied the *Strickland* test by looking to three elements, whether (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner has shown that he suffered prejudice as a result of counsel's

4

lapse, *i.e.*, that there is a reasonable probability that the result of the proceeding would have been different. *Commonwealth v. Pierce,* 527 A.2d 973, 975 (Pa. 1987). If a claim fails under any necessary element of the *Pierce* test, the court may proceed to that element first. *Commonwealth v. Bennett,* 57 A.3d 1185, 1195–1196 (Pa. 2011). Counsel will not be deemed ineffective for failing to raise a meritless claim. *Commonwealth v. Rivera,* 108 A.3d 779, 789 (Pa. 2014) (*citing Commonwealth v. Jones,* 912 A.2d 268, 278 (Pa. 2006)).

The Petitioner argues that, had trial counsel objected to the admission of a recorded prison phone conversation on timeliness grounds, this Court would have excluded it from evidence. 18 Pa.C.S. § 5720 requires the Commonwealth to disclose the contents of an electronic communication ten days prior to trial:

> The contents of any wire, electronic or oral communication intercepted in accordance with the provisions of this subchapter, or any evidence derived therefrom, shall not be disclosed in any trial, hearing, or other adversary proceeding before any court of the Commonwealth unless, not less than ten days before the trial, hearing or proceeding the parties to the action have been served with a copy of the order, the accompanying application and the final report under which the interception was authorized or, in the case of an interception under section 5704 (relating to exceptions to prohibition of interception and disclosure of communications), notice of the fact and nature of the interception. The service of inventory, order, application, and final report required by this section may be waived by the court only where it finds that the service is not feasible and that the parties will not be prejudiced by the failure to make the service.

18 Pa.C.S. § 5720. A court is not required to preclude evidence upon disclosure of a pretrial discovery violation; rather, the Court may permit discovery or inspection, grant a continuance, or enter an order as it deems just under the circumstances. Pa.R.E. 573(E). "[T]he admission of rebuttal testimony is within the sound discretion of the trial court, and the appropriate scope of

5

rebuttal evidence is defined by the evidence that it is intended to rebut." *Commonwealth v. Ballard*, 80 A.3d 380, 401–402 (Pa. 2013).

At trial, the Commonwealth introduced a recorded phone call between the Petitioner and a woman that was intercepted while the Petitioner was incarcerated. During this conversation, the Petitioner tells the woman "It's my fault. If I was back there, I would have taken care of everything like I was supposed to. I fucked up. I fucked up. My bad." After this Court permitted trial counsel and the Petitioner listen to the recording, trial counsel objected to its admission, arguing that the tape was both irrelevant and prejudicial. N.T. 8/20/2013 at 85–86. Although this Court did not initially permit the Commonwealth to play the tape, the Prosecutor introduced the tape in rebuttal.[2]

The Petitioner's claim has no merit, as he fails to establish that this Court would have excluded the audiotape had trial counsel objected. Indeed, the Commonwealth was required to disclose the contents of the audiotape ten days before trial. This Court took proper curative action under Rule 573 by permitting the Petitioner and trial counsel to hear the audiotape prior to admission. The Petitioner therefore fails to allege a basis for excluding the evidence.

In his second claim, the Petitioner alleges that trial counsel was ineffective for failing to object to the admission of the audiotape where the parties of the conversation were not identified. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what the proponent claims. Pa.R.E. 901(a). Voice identification may be made "by opinion based upon hearing the voice at any time under circumstances connecting with the alleged speaker." Pa.R.E.

---

[2] On direct testimony, Levocz testified that she recalls the contents of the recorded conversation she had with the Petitioner. The Petitioner testified that he did not recall the conversation with Levocz, and that the recorded conversation concerned the Petitioner's regret over missing a woman named Erica's birthday. N.T. 8/20/2013 at 112; N.T. 8/22/2013 at 45–46.

6

901(b)(5). Telephone conversation identification can be made "by evidence that a call was made to the number assigned at the time by the telephone company to (A) a particular person, if circumstances, including self-identification, show that the person answering was the one called." Pa.R.E. 901(b)(6). Proving the identity of a party to a telephone conversation may be accomplished by direct or circumstantial evidence. *Commonwealth v. Carpenter*, 372 A.2d 806, 808 (Pa. 1977)).

The Petitioner argues that the Commonwealth failed to identify the person the Petitioner spoke to during the recorded prison phone call.[3] Both parties agreed that the Petitioner spoke to a woman during the phone call. The Commonwealth presented sufficient circumstantial evidence to identify Levocz as party on the other line. At trial, the Petitioner stipulated that the phone call in question was "made by a number that's affiliated or associated with [his prison telephone] account." N.T. 8/22/2013 at 39. Moreover, the Petitioner identified himself as a speaker on surrebuttal. *Id.* at 45–46. Levocz testified that she had a telephone conversation with the Petitioner after his arrest and recalled him stating that he "fucked up and he messed up." N.T. 8/20/2013 at 112. A reasonable juror could conclude that the Petitioner and Levocz testified about the same conversation. For these reasons, trial counsel's objection based on a failure to identify the speakers would be overruled.

The Petitioner fails to demonstrate prejudice for each of his claims, as the suppression of the audiotape would not preclude the jury from convicting the Petitioner. The Commonwealth presented motive evidence to establish that the Petitioner sought to "take care of" any person who sold Levocz drugs. *Id.* at 100. Devine, Mitchell, and Brown each identified the Petitioner

---

[3] The Petitioner avers that the Commonwealth conceded that it could not identify the speaker. This is untrue. At trial, the Prosecutor stated that he would not ask the Petitioner to stipulate to the identity of the speaker, because he had not played the tape for Levocz, but stated that the Petitioner spoke to a young female. N.T. 8/22/13 at 40. This does not rise to the level of a concession.

7

as the shooter. Devine further testified that on the day of the shooting, the Petitioner approached the decedent, announced that he was "going to [SCI] Graterford today," and shot her four times from close range. Given the facts of the case, it is unlikely that the outcome of the trial would have been different had the audiotape been suppressed.

For the foregoing reasons, the petition is hereby DISMISSED. The Petitioner is hereby notified that he has thirty (30) days from the date of this Order and Opinion to file an appeal with the Superior Court.

BY THE COURT

Barbara McDermott

Barbara A. McDermott, J.

8

*Commonwealth v. Vincent Leach*, CP-51-CR-0002657-2012; CP-51-CR-0002658-2012

## PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing filing upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa. R. Crim. P. 114:

Philadelphia District Attorney's Office
Three South Penn Square
Philadelphia, PA  19107
Attn:  Robin Godfrey, Esq.

**Type of Service:**          **Hand Delivery**

James F. Berardinelli, Esq.
1600 Locust Street
Philadelphia, PA 19103

**Type of Service:**          **First Class Mail**

Vincent Leach
LD7890
SCI Fayette
Box 9999
LaBelle, PA 15450-1050

**Type of Service:**          **Certified Mail**

Dated: November 28, 2016

**Joseph R. Duffy**
**Law Clerk to the**
**Honorable Barbara A. McDermott**