J-S33029-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RICHARD BROWN | : | |
| | : | |
| Appellant | : | No. 612 EDA 2021 |

Appeal from the PCRA Order Entered March 5, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0808071-2004

BEFORE: BOWES, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY NICHOLS, J.: **FILED DECEMBER 10, 2021**

Appellant Richard Brown appeals from the order denying his first Post Conviction Relief Act[1] (PCRA) petition without a hearing. Appellant argues that he is entitled to withdraw his guilty plea based on after-discovered evidence. We affirm on the basis of the PCRA court's opinion.

We briefly summarize the relevant facts and procedural history of this case. On October 23, 2003, Anthony Harris (the victim) was in his car when he was approached by Appellant's co-defendant Brian Prout. PCRA Ct. Op., 6/22/21, at 3. Prout pointed an AK-47 style rifle at the victim. *Id.* The victim attempted to flee on foot, but Prout shot the victim in the leg. *Id.* Prout, Vincent Smithwick, and another individual loaded Harris into a car and drove away from the area. *Id.* During the drive, the three men asked the victim

_____

[1] 42 Pa.C.S. §§ 9541-9546.

for money. *Id.* The three men took approximately $1,000, a watch, and a necklace from the victim. *Id.* The three men drove the victim to an area near the Schuylkill River where they met Appellant and two other men. *Id.*

Appellant told Smithwick "to put him down" or "put him to sleep," referring to the victim. *Id.* Smithwick got back into the car with the victim and, with several of the other men, drove to the vicinity of 1300 Schuylkill Avenue in Philadelphia where Smithwick shot victim in the head. *Id.* at 3-4. A witness saw four men dragging a body towards the Schuylkill River and called the police. *Id.* at 4. The Philadelphia Police Marine Unit recovered the victim's body from the Schuylkill River. *Id.*

The police later executed a search warrant at the Lincoln Greene Apartments, where police found co-defendant Prout and another individual. *Id.* During the search of the apartment, the police recovered Appellant's identification card and two firearms. *Id.* A fired cartridge casing that was recovered from 1300 Schuylkill Avenue was later matched to one of the firearms seized during the search of the apartment. *Id.*

A jury found Appellant guilty of first-degree murder, robbery, kidnapping, conspiracy, and carrying a firearm without a license. *Id.* at 1. The Honorable Renee Cardwell Hughes sentenced Appellant to a term of life imprisonment. *Id.* This Court affirmed Appellant's judgment of sentence, and our Supreme Court denied Appellant's petition for allowance of appeal. *Commonwealth v. Brown*, 2738 EDA 2005 (Pa. Super. filed Apr. 29, 2009) (unpublished mem.), *appeal denied*, 981 A.2d 217 (Pa. 2009).

- 2 -

Appellant subsequently filed a timely PCRA petition alleging ineffective assistance of trial counsel. *Id.* The Honorable Theresa Sarmina denied Appellant's petition. On August 12, 2016, this Court reversed Judge Sarmina's order and granted Appellant a new trial. *Commonwealth v. Brown*, 145 A.3d 196 (Pa. Super. 2016).

On June 14, 2019, Appellant entered a negotiated guilty plea to third-degree murder, robbery, kidnapping, and possession of an instrument of crime.[2] PCRA Ct. Op. at 1-2. Pursuant to the negotiation, the Honorable Glenn B. Bronson (PCRA court) imposed an aggregate sentence of ten to twenty years' incarceration followed by twenty-five years' probation. *Id.* at 2.

Appellant filed a counseled, timely first[3] PCRA petition on June 10, 2020, raising a claim of after-discovered evidence. In his petition, Appellant stated that the affidavit of probable cause supporting the search warrant for the Lincoln Green Apartments was based on Juan Henriquez's identification of Appellant from a photo array.[4] PCRA Pet., 6/10/20, at 2-3. According to

---

[2] 18 Pa.C.S. §§ 2502(c), 3701(a)(1)(i), 2901(b), and 907(a), respectively.

[3] A PCRA petition filed after a defendant has been granted a new trial is considered a first PCRA petition for timeliness purposes. *See, e.g.*, *Commonwealth v. Turner*, 73 A.3d 1283, 1285 (Pa. Super. 2013) (stating when a PCRA petitioner is granted relief, a subsequent petition will be considered a first petition for timeliness purposes).

[4] At the time the police interviewed Juan Henriquez in 2003, he was a minor. Am. PCRA Pet., 12/17/20, at 2. Appellant referred to Henriquez by his initials in his PCRA pleadings and in his appellate brief.

- 3 -

Appellant, the police questioned Henriquez in connection with a different homicide on April 23, 2003. *Id.* Appellant asserted that, following his guilty plea, he learned that the police fabricated and backdated that photo array and the witness's identification of Appellant because the photograph of him used in the photo array was not taken following a 1999 arrest, but rather a photograph taken on May 21, 2003. *Id.* at 6-7. Appellant further claimed that the Pennsylvania State Police do not have any record of Appellant being arrested in 1999. *Id.* at 6-7. Appellant contended that this new evidence established that the police obtained the search warrant using a falsified eyewitness identification of Appellant as a suspect in a separate murder investigation. *Id.* at 7-8. Appellant argued that if he had this information before he pleaded guilty, he instead would have filed a motion to suppress the evidence seized from the Lincoln Green Apartments pursuant to the search warrant. *Id.* at 8.

The Commonwealth filed a motion to dismiss Appellant's PCRA petition, arguing that Appellant failed to explain how he could not have discovered this information in the past fifteen years by exercising reasonable diligence. Commonwealth's Mot. to Dismiss, 11/19/20, at 8. The Commonwealth contended that the photo array at issue was known to Appellant because he litigated a motion to suppress in that other case involving Henriquez and the same photo array. *Id.* The Commonwealth further asserted that Appellant's criminal history report, attached as an exhibit to its motion, indicated that Appellant was arrested on November 11, 1999, and that the report referenced

the subject arrest photo. *Id.* at 9, 9 n.3; Ex. A. The Commonwealth lastly argued that Appellant could not establish that the suppression of the murder weapon would have changed the outcome of a new trial because eyewitness testimony from the first trial established that Appellant was the ringleader of the group that kidnapped and murdered the victim. *Id.* at 9-10.

Appellant filed an amended PCRA petition on December 17, 2020, which included an additional exhibit, but was otherwise identical to his June 10, 2020 petition.

On January 15, 2021, the PCRA court issued a Pa.R.Crim.P. 907 notice of intent to dismiss Appellant's petition without a hearing. Appellant did not file a response. The PCRA court dismissed Appellant's petition on March 5, 2021. Appellant timely appealed. Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant raises the following issues for our review:

1. Did the PCRA court commit an abuse of discretion by ruling that Appellant failed to act with due diligence in bringing his claim?

2. Did the PCRA court commit an abuse of discretion by denying Appellant an evidentiary hearing and relief on his claim alleging that the proceedings would have been different had Appellant known at the time of his plea what he knows now?

3. Did the PCRA court commit an abuse of discretion by denying Appellant an evidentiary hearing because a material issue of fact exists as to whether the photo array in question was fabricated?

Appellant's Brief at 3 (formatting altered).

This Court has explained that

> [O]ur standard of review from the denial of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.

**Commonwealth v. Sandusky**, 203 A.3d 1033, 1043 (Pa. Super. 2019) (citations omitted and formatting altered).

Under the PCRA, a petitioner is eligible for relief if he can plead and prove by a preponderance of the evidence that his conviction resulted from "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S. § 9543(a)(2)(vi).

It is well settled that an after-discovered evidence claim[5] requires a petitioner to establish that "(1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict[]" if a

---

[5] We note that in his brief, Appellant uses both the terms "newly discovered evidence" and "after-discovered evidence" to describe his claim for PCRA relief. A claim of newly discovered evidence is one of the exceptions to the PCRA's one year time-bar, **see** 42 Pa.C.S. § 9545(b)(1)(ii), while an after-discovered evidence claim is substantive claim for PCRA relief. **See** 42 Pa.C.S. § 9543(a)(2)(vi); **see also Commonwealth v. Cox**, 146 A.3d 221, 228-29 (Pa. 2016) (discussing confusion between the nomenclature and application of Sections 9545(b)(1)(ii) and 9543(a)(2)(vi)). Because Appellant's PCRA petition was timely filed and Appellant has presented a substantive claim for relief based on the photo array, which he claims to have discovered after pleading guilty, we refer to his claim as one involving after-discovered evidence.

new trial were granted. *Cox*, 146 A.3d at 228 (citation and quotation marks omitted). "The test is conjunctive; the defendant must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted." *Commonwealth v. Padillas*, 997 A.2d 356, 363 (Pa. Super. 2010) (citations omitted).

In determining "whether the alleged after-discovered evidence is of such nature and character that it would likely compel a different verdict if a new trial is granted[,] a court should consider the integrity of the alleged after-discovered evidence, the motive of those offering the evidence, and the overall strength of the evidence supporting the conviction." *Id.* at 365 (citations omitted).

Further, it is well settled that

[t]here is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary. To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

*Commonwealth v. Maddrey*, 205 A.3d 323, 328 (Pa. Super. 2019) (citations and quotation marks omitted), *appeal denied*, 218 A.3d 380 (Pa. 2019).

Following our review of the record, the parties' briefs, and the well-reasoned conclusions of the PCRA court, we affirm on the basis of the PCRA court's opinion. *See* PCRA Ct. Op. at 4-10. Specifically, we agree with the PCRA court's conclusion that the Appellant already knew about the subject

photo array prior to pleading guilty on June 14, 2019, because Appellant challenged Henriquez's identification using the same photo array at the 2007 suppression hearing in another one of Appellant's cases. *See id.* at 6-9; *see also Cox*, 146 A.3d at 228; *Padillas*, 997 A.2d at 363. We also agree with the PCRA court's conclusion that Appellant did not raise a genuine issue of material fact that would entitle him to relief if resolved in his favor because, even if the photo array was fabricated and backdated, Appellant would have known about these actions prior to pleading guilty on June 14, 2019. *See* PCRA Ct. Op. at 9-10. Therefore, the PCRA court did not err in denying Appellant's PCRA petition without an evidentiary hearing. *See Maddrey*, 205 A.3d at 328.

Order affirmed.

Judge Bowes joins the memorandum.

Judge McLaughlin concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/10/2021

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF
PENNSYLVANIA

      v.

RICHARD BROWN

               OPINION

BRONSON, J.

:        CP-51-CR-0808071-2004
:
:
:
:        **FILED**
:
:        JUN 2 2 2021
:
        Office of Judicial Records
        Appeals/Post Trial

        June 22, 2021

On July 21, 2005, following a capital murder jury trial before the Honorable Renee Cardwell Hughes, defendant Richard Brown was convicted of one count each of first-degree murder (18 Pa.C.S. § 2502(c)), robbery (18 Pa.C.S. § 3701(a)(1)(i)), kidnapping (18 Pa.C.S. § 2901(b)), criminal conspiracy (18 Pa.C.S. § 903), and carrying a firearm without a license (18 Pa.C.S. § 6106). On September 7, 2005, after a penalty hearing, the jury sentenced defendant to life imprisonment. On April 29, 2009, the Superior Court affirmed defendant's judgment of sentence. On October 1, 2009, the Supreme Court denied defendant's petition for allowance of appeal. On March 20, 2010, defendant filed a *pro se* petition under the Post-Conviction Relief Act ("PCRA"). Defendant's petition was dismissed by the Honorable Theresa Sarmina on October 3, 2014, and defendant appealed. On August 12, 2016, the Superior Court reversed and remanded, granting defendant a new trial because his attorney was ineffective for failing to meet with defendant before trial. *Commonwealth v. Brown*, 145 A.3d 196 (Pa. Super. 2016). The case was thereafter assigned to the undersigned trial judge.

On June 14, 2019, defendant pled guilty, pursuant to a negotiated guilty plea agreement, to one count each of third degree murder (18 Pa.C.S. § 2502(c)), robbery (18 Pa.C.S. §

1

3701(a)(1)(i)), kidnapping (18 Pa.C.S. § 2901(b)) and possessing an instrument of crime (18 Pa.C.S. § 907). That day, the Court imposed the negotiated aggregate sentence of 10 to 20 years incarceration in state prison to be followed by 25 years of reporting probation.

On November 12, 2019, defendant sent the Court a letter in which he asked to be resentenced, or in the alternative, to withdraw his guilty plea. Defendant claimed that since he had been incarcerated since May of 2003, and was immediately eligible for parole after pleading guilty, that it was "insinuated" that he would be immediately paroled after pleading guilty. Because the Pennsylvania Board of Probation and Parole had not released him, defendant sought relief from the trial court. On November 18, 2019, the Court docketed that letter as "Motion to Withdraw Guilty Plea" and denied the motion as untimely filed.

On June 10, 2020, defendant filed a counseled Post Conviction Relief Act petition ("PCRA Petition"), which is here at issue. The PCRA Petition asserted a claim of after-discovered evidence regarding fraud in connection with a photo array that had been allegedly shown to a witness on April 23, 2003. On November 19, 2020, the Commonwealth filed a Motion to Dismiss defendant's PCRA Petition ("Motion to Dismiss"). On December 17, 2020, defendant filed a response to the Commonwealth's Motion to Dismiss ("Defense Reply"). On January 15, 2021, the Court issued a notice, pursuant to Rule 907 of the Pennsylvania Rules of Criminal Procedure, of the Court's intent to dismiss defendant's petition without a hearing ("907 Notice"). On March 5, 2021, the Court dismissed defendant's PCRA petition.

Defendant has now appealed from the Court's order dismissing defendant's PCRA petition on the grounds that: 1) the Court erred in finding that defendant did not act with the requisite diligence in obtaining the after-discovered evidence; and 2) the Court erred by dismissing defendant's PCRA petition without an evidentiary hearing. Defendant's Rule 1925

2

Statement of Matters Complained of on Appeal ("Statement of Matters") at ¶¶ 1-3.[1] For the

reasons set forth below, defendant's claims are without merit and the Court's order dismissing

defendant's petition should be affirmed.

## I. FACTUAL BACKGROUND

The factual basis proffered by the Commonwealth for defendant's guilty plea

established the following:

On October 23, 2003, Anthony Harris, the victim, was in his car with Christopher Smith[2]

when he was approached by Brian Prout.[3] N.T. 6/14/2019 (Guilty Plea) at 50. Prout pointed an

AK-47 type weapon at Harris. *Id.* at 50-51. Harris attempted to flee the area on foot and Prout

fired several shots towards him. *Id.* at 51. Harris was struck in the legs and fell to the ground.

*Id.*

Harris was then loaded into a car and driven from the area by Prout, Smith, and a man

named Vincent Smithwick. *Id.* at 51, 55-56. At the time he was loaded into the car, Harris was

conscious and was asked several times for money. *Id.* Ultimately, approximately $1,000, a

watch, and a large necklace were taken from the victim. *Id.* at 55, 62. Harris was then driven by

the males to an area near the Schuylkill River. *Id.* at 51, 55. There they were met by defendant

Richard Brown,[4] and two other males, identified as Hanif Jacobs[5] and Anthony Petty.[6] *Id.* at 55.

Smithwick had a conversation with defendant wherein defendant told Smithwick "to put him

down" or "put him to sleep" in reference to Harris. *Id.* at 56. Smithwick then went back to the

car where Harris was being held. *Id.* at 57. Smithwick sat in the backseat with Harris, and the

---

[1] Defendant's second and third claims, as well as part of his first claim, premise error on the absence of an evidentiary hearing. These claims have been combined for ease of analysis.
[2] Christopher Smith is also known as "Jug." *Id.* at 50.
[3] Brian Prout is also known as "A.Z." *Id.* at 50.
[4] Defendant is also known as "Manny Boo." *Id.* at 50.
[5] Hanif Jacobs is also known as "Hanif Buck." *Id.* at 55.
[6] Anthony Petty is also known as "Stutter." *Id.* at 55.

3

vehicles drove off. *Id.* at 56-57. Individuals from the car that defendant was in and the car that Harris was in were in contact by phone before they reached their next location. *Id.* at 57. Once they reached the location, Smithwick shot Harris in the head. *Id.* at 56-57. At that point, Harris's body was taken to 1300 Schuylkill Avenue. *Id.* at 57.

At that location, at approximately 2:00 A.M., Jack Darrah was driving by himself and saw four individuals dragging a body through the snow over to the Schuylkill River embankment. *Id.* at 57. Darrah then called the police. *Id.* at 57-58.

The Marine Unit arrived at the location and discovered the body of Harris dumped into the river with multiple gunshot wounds. *Id.* at 58. The medical examiner determined that Harris had a penetrating gunshot wound to the head, a wound to the right forearm, a gunshot wound to the left posterior thigh, and a gunshot wound to the left forearm with associated reentry into the left upper arm. *Id.* The cause of death was determined to be multiple gunshot wounds and the manner of death determined to be homicide. *Id.*

Following the death of Harris, defendant admitted to his cousin, Aquil Bond, that he participated in the killing of Harris. *Id.* at 59. Specifically, defendant told Bond that he gave the order to Smithwick to shoot Harris. *Id.* at 59-60.

A search warrant was executed at the Lincoln Greene Apartments, where police found Brian Prout and Jermaine Brown inside an apartment. *Id.* at 60. Defendant's identification was found within the home. *Id.* at 60-61. Also inside the apartment were two guns, one of which matched a fired cartridge casing found at 1300 Schuylkill Avenue. *Id.* at 60.

## II. DISCUSSION

An appellate court's review of a PCRA court's grant or denial of relief "is limited to determining whether the court's findings are supported by the record and the court's order is

4

otherwise free of legal error." *Commonwealth v. Green*, 14 A.3d 114, 116 (Pa. Super. 2011) (internal quotations omitted). The reviewing court "will not disturb findings that are supported by the record." *Id.*

Under the PCRA, all petitions must be filed within one year of the date that judgment on the case becomes final. 42 Pa.C.S. § 9545(b)(1); *see also Commonwealth v. Bennett*, 930 A.2d 1264, 1267 (Pa. 2007). This time limit is jurisdictional, and a court may only review an untimely petition if one of the three statutory exceptions to the timeliness requirement applies. 42 Pa.C.S. § 9545(b)(1); *Commonwealth v. Murray*, 753 A.2d 201, 203 (Pa. 2000). Here, defendant contended throughout the proceedings in the PCRA court that although his PCRA petition was untimely, the newly-discovered facts exception to the timeliness requirement was applicable. *See* PCRA Petition at ¶¶ 22-26. However, defendant's petition was not untimely. Defendant's judgment of sentence became final on July 14, 2019, 30 days after the date of sentencing. Therefore, defendant had until July 14, 2020, to timely file a PCRA petition. As defendant filed the instant petition on June 10, 2020, his petition was timely filed.

Here, all of defendant's claims on appeal are premised upon his contention that after-discovered evidence entitles him to have his guilty plea vacated. In particular, he claims that he learned on August 5, 2019, that the police submitted a search warrant for his home that included in the probable cause affidavit a fraudulent claim that a witness had picked him out of a photospread. PCRA Petition at ¶ 19. To obtain relief under the PCRA based on after-discovered evidence, the defendant must plead and prove that the evidence: "(1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; 3) will not be used solely to impeach the credibility of a witness; and 4) would likely result in a different verdict if a new trial were granted."

5

*Commonwealth v. Small*, 189 A.3d 961, 972 (Pa. 2018). A claim of after-discovered evidence may entitle a defendant to withdraw a guilty plea if the new evidence would have justified a new trial had the case gone to trial instead of being resolved with a guilty plea. *See Commonwealth v. Peoples*, 319 A.2d 679, 681 (Pa. 1974); *Commonwealth v. Heaster*, 171 A.3d 268, 273 n.6 (Pa. Super. 2017). "Any after-discovered evidence [that] would justify a new trial would also entitle a defendant to withdraw [his] guilty plea." *Peoples*, 319 A.2d at 681; *see Commonwealth v. Mowery*, 2020 WL 2617039, at *2 (Pa. Super. May 22, 2020) (non-precedential decision). In determining whether after-discovered evidence would result in a different verdict, a court is to "consider the integrity of the alleged after-discovered evidence, the motive of those offering the evidence, and the overall strength of the evidence supporting the conviction." *Commonwealth v. Padillas*, 997 A.2d 356, 365 (Pa. Super. 2010) (citing *Commonwealth v. Parker*, 431 A.2d 196, 200 (Pa. 1981)).

Here, defendant failed to proffer evidence that could establish a valid claim of after-discovered evidence. The basis for his claim arises from a different murder investigation involving defendant, that is, the robbery and murder of Kenia Martinez and Juan Rodon. In that investigation, ten-year-old witness Juan Henriquez allegedly identified defendant from a photospread as one of the perpetrators. Based on that identification, police secured a search warrant for defendant's apartment, which turned up ballistics evidence that matched the ballistics from the shooting of Harris in the case at bar. Defendant claims that after-discovered evidence establishes that the police fabricated the evidence that Henriquez was shown a photospread, and therefore, the highly incriminating ballistics evidence was the product of a fraudulent search warrant. *See* PCRA Petition at ¶¶ 3-8, 14, 19-21.

Defendant failed, however, to proffer evidence to substantiate this claim. According to the statement of Henriquez, he was shown the photospread by police on April 23, 2003. Exh. A to PCRA Petition. At a hearing to suppress the identification by Henriquez in the Martinez/Rodon murder case, the Commonwealth produced a photograph of defendant that was purportedly chosen by Henriquez from the photospread, and which was taken after a 1999 arrest of defendant. N.T. 4/26/2007 (CP-51-CR-0908571-2003) at 13. Defendant's proffered after-discovered evidence is a letter from the Pennsylvania State Police ("PSP"), dated August 5, 2019, purportedly regarding the court-ordered expungement of that 1999 arrest, which stated that information in the court expungement order does not match the PSP records of the arrest. Exh. D to PCRA Petition. Defendant maintains that this letter from the PSP shows that "there had been no record at all of his supposed arrest from 1999." PCRA Petition at ⁋ 19. He further claims that the PSP letter demonstrates that the photospread allegedly shown to Henriquez was "derived from a fake, non-existent arrest," and that it was "illegally back-dated and fabricated." PCRA Petition at ⁋ 21. As a result, defendant maintains that the police fabricated the photo identification in order to secure the search warrant. Moreover, defendant avers in an affidavit that the photo allegedly shown to Henriquez was actually taken on May 21, 2003, *after* Henriquez was interviewed, thereby proving the fraud in the search warrant affidavit. Exh. E to PCRA Petition.

Defendant's claim fails for several reasons. First, the record conclusively establishes that even assuming *arguendo* that defendant's contention about the photospread was true, defendant would have known about the fraud well before he pled guilty on June 14, 2019. The suppression hearing regarding the identification of defendant by Henriquez was held on April 26, 2007, more than 12 years before defendant's guilty plea. At that hearing, although the Commonwealth could

7

not locate the photospread, it provided to defense counsel a copy of an arrest photograph of defendant that allegedly was selected by Henriquez from the photospread. Defense counsel acknowledged then that the photograph was a "[p]icture of this defendant in 1999, according to [the Commonwealth]." N.T. 4/26/2007 (CP-51-CR-0908571-2003) at 13. If defendant's arrest in 1999 was "non-existent," defendant would have surely known, by the time of the suppression hearing, that the photograph was backdated and fraudulent, since he obviously knew whether he had been arrested in 1999 without checking PSP records.[7]

Moreover, PSP records actually *confirm* the 1999 arrest. The PSP criminal history report for defendant includes a November 11, 1999 firearms arrest of defendant, and states, "Photo available: Yes." Exh. A to Commonwealth Motion to Dismiss (block capitalization omitted). This record from the PSP Central Repository is not contradicted by the PSP record relied upon by defendant as after-discovered evidence. That letter simply shows some discrepancy in whatever paperwork defendant submitted to expunge the arrest and the PSP records. In particular, the letter noted discrepancies between the court order submitted for expungement and the charges, OTN, and date of arrest in the PSP's records. Exh. D to PCRA Petition.

In addition, while defendant claims that he was setup and defrauded by the police, there is no averment that he was setup and defrauded by witness Henriquez. At the suppression hearing, Henriquez testified that on April 23, 2003, he spoke with two detectives who showed him pictures. N.T. 4/26/2007 (CP-51-CR-0908571-2003) at 86-87. Henriquez stated further that although he did not know the defendant's name, he recognized defendant's photograph as one of three men who entered his uncle's home on January 25, 2003. *Id.* at 36, 40, 87. Further, there

---

[7] The suppression court suppressed both the in-court and out-of-court identifications by Henriquez because the Commonwealth could not locate the photospread, and only produced the photograph of defendant that Henriquez selected from the photospread. N.T. 4/26/2007 (CP-51-CR-0908571-2003) at 136-37.

8

was a stipulation between counsel at that hearing that if the witness was shown his signature on the back of the photograph he would have confirmed that it was his signature. *Id.* at 85. Henriquez then went on to explain the photo array process in detail, stating he was shown more than ten photographs, and asked to sign the back of the photograph that he recognized. *Id.* at 87-93. Accordingly, the testimony of Henriquez, which defendant does not claim to be fraudulent, defeats his claim.

Finally, while defendant avers in his affidavit that the picture purportedly identified by Henriquez was taken in May of 2003, after the photospread was allegedly shown to Henriquez, defendant proffers no basis for making this assertion, nor any explanation as to how he could not have discovered the fraud before he pled guilty.

Accordingly, the record conclusively establishes that defendant's proffered after-discovered evidence could not entitle him to relief, and in any event, must have been known by defendant well before he elected to plead guilty.

As to the Court's alleged error in not granting defendant an evidentiary hearing, "[i]t is well settled that [t]here is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary." *Commonwealth v. Maddrey*, 205 A.3d 323, 328 (Pa. Super. 2019) (internal quotations omitted). Further, where a defendant seeks the reversal of a PCRA court's decision to dismiss a defendant's petition without a hearing, defendant must show "he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." *Maddrey*, 205 A.3d at 328 (quoting *Commonwealth v. Hanible*, 30 A.3d 426, 452 (Pa. 2011)).

9

For the reasons set forth above, none of the evidence proffered by defendant, even if true, would establish his contention that the photospread was fabricated and backdated. Moreover, even if the photospread had been fabricated, the existing record conclusively shows that defendant would have known of the fraud well before he pled guilty. Accordingly, the Court did not err in dismissing defendant's petition without an evidentiary hearing.

## III. CONCLUSION

For all of the foregoing reasons, the Court's order dismissing defendant's PCRA Petition should be affirmed.

BY THE COURT:

GLENN B. BRONSON, J.

10

Commonwealth v. Richard Brown                    CP-51-CR-0808071-2004
Type of Order: Opinion

## PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing Court Order upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa.R.Crim.P.114:

**Defense Counsel/Party:**

     John Belli, Esquire
     2 Penn Center
     15th & JFK Blvd. Suite 900
     Philadelphia, PA 19102

Type of Service:  ( ) Personal (**X**) First Class Mail ( ) Other, please specify:

**District Attorney:**

     Lawrence Goode, Esquire
     Chief, Appeals Unit
     Philadelphia District Attorney's Office
     Three South Penn Square
     Philadelphia, PA 19107

Type of Service: () Personal () First Class Mail (**X**) Other, please specify: ***Interoffice Mail***

**Additional Counsel/Party:**

     Joseph D. Seletyn, Esquire
     Prothonotary
     Office of the Prothonotary – Superior Court
     530 Walnut Street, Suite 315
     Philadelphia, PA 19106

Type of Service:  ( ) Personal (**X**) First Class Mail ( ) Other, please specify:

**Dated: June 22, 2021**


Megan O'Donnell
Law Clerk to Hon. Glenn B. Bronson